IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERI RENE EDWARDS, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-02037 |
| | § | |
| AMAZON.COM, INC., | § | |
| AMAZON.COM SERVICES LLC, | § | |
| AND AMAZON LOGISTICS, INC., | § | |
| *Defendants.* | § | |

**PLAINTIFF'S RESPONSE TO MOTION TO COMPEL ARBITRATION AND
STAY ACTION PENDING ARBITRATION**

Kirk Pittard
State Bar No. 24010313
kpittard@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
Telephone: (214) 946-8000
Facsimile: (214) 946-8433

Lauren S. Harbour
State Bar No. 24070649
lharbour@dpslawgroup.com
Dana B. Levy
State Bar No. 24031869
dlevy@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
2638A Rice Blvd, #447
Houston, Texas 77005
Telephone: (214) 946-8000
Facsimile: (214) 946-8433

Jonathan D. Sneed
Texas Bar No. 24085594
jsneed@awtxlaw.com
Brant J. Stogner
Texas Bar No. 24038389
bstogner@awtxlaw.com
ABRAHAM, WATKINS, NICHOLS, AGOSTO,
AZIZ & STOGNER
800 Commerce St.
Houston, Texas 77002
Telephone: (713) 222-7211
Facsimile: (713) 225-0827

***Attorneys for Plaintiff***

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................................iii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................................vi

RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES ........................................vii

I.   INTRODUCTION...................................................................................................1

II.  BACKGROUND FACTS ........................................................................................2

    A.   Amazon's electronic acknowledgment and document review system utilizes three separate platforms. ............................................................. 2

    B.   On one platform, Ms. Edwards reviewed new-hire documents with her personal email identifier ("Acknowledged Documents"). ....................... 4

    C.   Despite Amazon's claims of utilizing AdobeSign, Ms. Edwards' alleged electronic signature is not verified AdobeSign and she did not sign the RAA or MAA (the "Alleged Signed Documents"). .................................................. 5

        1.   *The MAA is neither signed nor acknowledged by any personal identifier*..................... 5

        2.   *Ms. Edwards did not sign the RAA.* ........................................... 6

III. SUMMARY OF THE ARGUMENT...........................................................................7

IV.  ARGUMENT AND AUTHORITIES .........................................................................9

    A.   The MAA does not contain a delegation clause. ..................................... 10

    B.   The MAA does not exist because Ms. Edwards neither signed it nor agreed to be bound by its terms by her conduct.............................................. 12

        1.   *There is no conclusive evidence Ms. Edwards signed the RAA.* ................... 12

        2.   *There is no conclusive evidence Ms. Edwards was notified or made aware of the MAA or RAA prior to beginning her employment.* ................... 16

    C.   The MAA and RAA are unenforceable because they are ambiguous................... 18

V.   CONCLUSION AND PRAYER................................................................................20

TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Aerotek, Inc. v. Boyd*,
   624 S.W.3d 199 (Tex. 2021) ........................................................12, 13, 14, 15, 16

*Am. Mfrs. Mut. Ins. Co. v. Schaefer*,
   124 S.W.3d 154 (Tex. 2003) ....................................................................................19

*Banc One Acceptance Corp. v. Hill*,
   367 F.3d 426 (5th Cir. 2004) .....................................................................................9

*Big Bass Towing Co. v. Akin*,
   409 S.W.3d 835 (Tex. App.—Dallas 2013, no pet.)..........................................16

*Branch Law Firm, L.L.P. v. Osborn*,
   447 S.W.3d 390 (Tex. App.—Houston [14th Dist.] 2014, no pet.)..................12

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*,
   940 S.W.2d 587 (Tex. 1996) ....................................................................................19

*In re Dillard Dep't Stores, Inc.*,
   181 S.W.3d 370 (Tex. 2006) ....................................................................................16

*Doe v. Columbia North Hills Hosp. Sub., L.P.*,
   521 S.W.3d 76 (Tex. App.—Fort Worth 2017, pet. denied) ...........................16

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)......................................................................................................9

*Firstlight Federal Credit Union v. Loya*,
   478 S.W.3d 157 (Tex. App.—El Paso 2015, no pet.)..................................10, 18

*Fleetwood Enters., Inc. v. Gaskamp*,
   280 F.3d 1069 (5th Cir. 2002) ................................................................................18

*Freis v. Canales*,
   877 S.W.2d 283 (Tex. 1994) ....................................................................................12

*GSC Wholesale, LLC v. Young*,
   654 S.W.3d 558 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) .........19

*Henry v. Cash Biz, LP*,
   551 S.W.3d 111 (Tex. 2018) .....................................................................................9

iii

TABLE OF AUTHORITIES (CONT'D)

CASES                                                                    PAGE(S)

*Houston ANUSA, LLC v. Shattenkirk*,
    No. 14-20-00446-CV, 2023 WL 5437714 (Tex. App.—Houston [14th
    Dist.] Aug. 24, 2023, no pet. h.) ........................................................................9, 13

*Huckaba v. Ref-Chem., L.P.*,
    892 F.3d 686 (5th Cir. 2018) .........................................................................9

*J.M. Davidson, Inc. v. Webster*,
    128 S.W.3d 223 (Tex. 2003) ........................................................................18

*Lucchese Boot Co. v. Rodriguez*,
    473 S.W.3d 373 (Tex. App.—El Paso 2015, no pet.) ....................................19

*In re Morgan Stanley & Co. Inc.*,
    293 S.W.3d 182 ......................................................................................11, 18

*OPE Intern. LP v. Chet Morrison Contractors, Inc.*,
    258 F.3d 443 (5th Cir. 2001) .........................................................................9

*Prudential Secs., Inc. v. Marshall*,
    909 S.W.2d 896 (Tex. 1995) ........................................................................18

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ......................................................................................11

*Robertson v. Fiesta Restaurant Group, Inc.*,
    No. 3:17-CV-00384, 2018 WL 3130677 (S.D. Tex. June 8, 2018) ...............17, 18

*Robinson v. Home Owners Mgmt. Enters., Inc.*,
    590 S.W.3d 518 (Tex. 2019) ........................................................................10

*RSL Funding, LLC v. Newsome*,
    569 S.W.3d 116 (Tex. 2018) ........................................................................11

*Sporran Kbusco, Inc. v. Cerda*,
    227 S.W.3d 288 (Tex. App.—San Antonio 2007, pet. denied) ....................16

*T.O. Stanley Boot Co., Inc. v. Bank of El Paso*,
    847 S.W.2d 218 (Tex. 1992) ........................................................................19

*Thick v. Dolgencorp of Tex., Inc.*,
    No. 4:16-CV-00733, 2017 WL 108297 (E.D. Tex. Jan. 11, 2017) ................15

iv

TABLE OF AUTHORITIES (CONT'D)

CASES                                                                     PAGE(S)

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*,
   667 S.W.3d 694 (Tex. 2023) ....................................................................9

*USAA Tex. Lloyds Co. v. Menchaca*,
   545 S.W.3d 479 (Tex. 2018) ..................................................................12

*Wagner v. Apache Corp.*,
   627 S.W.3d 277 (Tex. 2021) ....................................................................9

*In re Weekley Homes, L.P.*,
   180 S.W.3d 127 (Tex. 2005) ..................................................................10

*Wheeler v. Dollar Tree Stores, Inc.*,
   No. 6:17-CV-00847, 2017 WL 6813258 (W.D. La. Dec. 14, 2017) ....................................16

*Will-Drill Resources, Inc. v. Samson Resources Co.*,
   352 F.3d 211 (5th Cir. 2003) ..................................................................11

*Zorilla v. Uber Techs., Inc.*,
   No. 4:16-CV-615, 2017 WL 3278061 (S.D. Tex. Mar. 16, 2017)........................................15

STATUTES

9 U.S.C. § 4 ..............................................................................................11

TEX. BUS. & COM. CODE § 322.009(a) ...........................................................13

TEX. CIV. PRAC. & REM. CODE § 171.021(b) ..............................................11

OTHER AUTHORITIES

Elissa  Silguero,
   Insufficient Denial: Evidentiary Weight of Denying an E-Signature
   Aerotek, Inc. v. Boyd, 624 S.W.3d 199 (Tex. 2021),
   40 CORP. COUNS. REV. 225, 225–26 (2021) .........................................................13

### STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

On May 5, 2023, Ms. Edwards timely filed suit in state court for catastrophic injuries she sustained at her workplace while working for Amazon.  (Doc. 1).  Upon Amazon's motion, the case was removed to this court on June 2, 2023.  (Doc. 1).  Trial is set for January 21, 2025.  (Doc. 10).

**RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES**

**A.** Defendants' proposed issue regarding whether the Arbitration Agreement is covered by the Federal Arbitration Act (FAA) is immaterial to whether the Agreement itself is enforceable. Therefore, although Ms. Edwards does not concede the FAA applies, she does not respond to this issue, as it is not relevant.

**B.** There is no dispute that Texas contract law applies to whether the Arbitration Agreement exists, is valid, and is enforceable.  Therefore, Ms. Edwards does not brief this separately.

**C.** Arbitration agreements may contain delegation clauses that expressly delegate certain "gateway issues" to the arbiter, including validity and enforceability of the agreement itself, as opposed to the trial court resolving these gateway issues. Amazon claims the MAA contains a delegation clause.  The issue is whether the MAA contains a delegation clause and whether it clearly and unmistakably delegates resolution of validity, enforceability, and existence issues to the arbiter.

**D.** Whether the Arbitration Agreement contains an unambiguous delegation clause is immaterial to whether the Arbitration Agreement exists at all. If Ms. Edwards never signed or agreed to the Arbitration Agreement, the contract does not exist. The issue for this Court to resolve is whether Defendants provided conclusive evidence of the efficacy of their online security procedures, and whether Ms. Edwards provided sufficient evidence to show she did not sign or receive the Arbitration Agreement or Acknowledgment Form.

**E.** The Arbitration Agreement and Acknowledgment Form contain conflicting terms and an undefined and unascertainable "Effective Date."  The issue is whether the Arbitration Agreement is unenforceable and invalid because its terms are ambiguous.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERI RENE EDWARDS, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-02037 |
| | § | |
| AMAZON.COM, INC., | § | |
| AMAZON.COM SERVICES LLC, | § | |
| AND AMAZON LOGISTICS, INC., | § | |
| *Defendants*. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION

Plaintiff Teri Rene Edwards ("Ms. Edwards") files this Response to Defendants' Amazon Logistics, Inc., Amazon.com Services, LLC, and Amazon.com, Inc. ("Defendants" or "Amazon") Motion to Compel Arbitration and Stay Action Pending Arbitration (Doc. 11), showing Amazon's alleged arbitration agreement is unenforceable because it never formed into existence, it is invalid, and ambiguous.

## I.   INTRODUCTION

Rene Edwards sued Amazon after she was catastrophically injured while working for the company at one of its fulfilment centers. Amazon moves to dismiss based on its Mutual Agreement to Arbitrate ("MAA") found within the AmazonTXCare Employee Injury Benefit Plan / SUMMARY PLAN DESCRIPTION ("SPD" or "Benefit Plan") that was allegedly distributed to all new employees and current employees in (or after) March 2020. Doc. 11 at Ex. 4. Defendants' chosen method of notifying its employees of the MAA is through a Receipt and Arbitration Acknowledgment ("RAA") that purportedly

1

requires the employee's electronic signature attesting they reviewed or received the MAA/SPD. Doc. 11 at Ex. 1. The issue for this Court is whether Ms. Edwards signed or received the MAA or RAA such that she may be bound by its terms. Not only did Ms. Edwards not consent to the MAA or RAA, but their terms are ambiguous. This Court should deny Amazon's Motion to Compel Arbitration.

## II.  BACKGROUND FACTS

In this workplace injury case, Ms. Edwards was severely injured by another employee when she was knocked to the ground by a pushcart loaded with merchandise at an Amazon fulfillment center. *See* Doc. 1 at p. 1. The factual presentation is confined to the circumstances surrounding Ms. Edwards' alleged receipt of the MAA and RAA.

### A.  Amazon's electronic acknowledgment and document review system utilizes three separate platforms.

Amazon—a global corporation—utilizes three electronic acknowledgment procedures for its electronic certification. The first platform is unknown, but is categorized by the "Acknowledged Documents" as each are acknowledged with Ms. Edwards' personal identifier: rene77456@yahoo.com plus the corresponding time stamp from her personal device.  Doc. 11 at Ex. 5 C-I; *see* **Ex. 1**, Affidavit of Scott Greene, at ¶¶ 23–24 (referring to the "Acknowledged Documents" collectively). These are undisputed because they contain the personal identifier acknowledgment and time stamp from the identifier's electronic device at the top of each page. *See, e.g.*, Doc. 11 at 5, Ex. 5C-I. The personal identifier sufficiently links Ms. Edwards to the document. *See* **Ex. 1** at ¶ 30.

The second platform is evidenced by Amazon's representative, Mark Brown, who provided two declarations for Amazon's Motion attesting to its secure online procedures. *See* Doc. 11 at Exs. 3, 5.  These documents are signed using DocuSign. *Id*. The use of DocuSign reflects a greater level of personalized identification, authenticating Mr. Brown made the statements within the electronically signed declarations. *See* Doc. 11 at Exs. 3, 5; *see also* **Ex. 1** at ¶ 32, **Ex. 1E** (recreating an RAA, but with DocuSign, highlighting more identifying information than AdobeSign, including signer's IP address, email address, time stamp of signature, when the invitation to sign the document was sent and by whom, and specifically *to whom* the invitation was sent).

Third, and the issue before this Court, is Amazon's alleged use of AdobeSign for the RAA. Typically, AdobeSign automatically generates a blue printed name and date/time stamp immediately under the electronic signature and generates a Final Audit Report containing personal identifiers.  *See* **Ex. 1, Ex. 1F**.  The following displays an authentic electronic signature from AdobeSign (left), compared to an electronic signature merely "certified" by AdobeSign (right):



| Paul Langford | Teri Rene Edwards |
|---|---|
| Paul Langford (Oct 30, 2023 17:05 PDT) | |
| **Employee Signature** | **Employee Signature** |

*Compare* **Ex. 1F** (exemplifying a properly authenticated electronic signature through the AdobeSign platform) *with* Doc. 11 at Ex. 1.  Amazon alleges it used AdobeSign to secure Ms. Edwards' electronic signature, but the comparison makes it clear it did not. Amazon's produced electronic signature plainly lacks the blue time stamp and no Final Audit Report has been provided.

Despite conclusory assertions to the contrary, Amazon's RAA is not secured by AdobeSign. *See* **Ex. 1** at ¶¶31, 33, **Ex. 1D**. Rather, Amazon utilizes an unknown online platform that can easily be recreated to be "certified" by Adobe, but not actually signed using the AdobeSign application. *See* **Ex. 1** at ¶31(b), **Ex. 1D** (recreating a Jane Doe certificate similar to Amazon's with a back-dated time stamp and signature certificate details identical to those presented to this Court by Amazon).

### B. On one platform, Ms. Edwards reviewed new-hire documents with her personal email identifier ("Acknowledged Documents").

Amazon hired Ms. Edwards as a Warehouse Associate. *See* **Ex. 2**, Affidavit of Teri Rene Edwards, at ¶ 2. Before her first day of work, an entity named Prime Now LLC emailed Ms. Edwards that her "new hire employment documents" were available for review and that she must review them before her first day. *See* **Ex. 2** at ¶2. This employment offer notified Ms. Edwards the documents included a "confidentiality agreement (NDA) and policy documents". *See* **Ex. 2** at ¶ 2, Ex. 2A. Noticeably absent was any mention of the MAA or the RAA. *See* **Ex. 2** at ¶ 2, **Ex. 2A**.

At this time, Ms. Edwards was working full-time for the Harris County Toll Road Authority. *See* **Ex. 2** at ¶ 4. Her job required intensive photographic review requirements. *See* **Ex. 2** at ¶ 4 (testifying she worked from 9am to 5pm reviewing 500 images an hour, 4000 a day, and 20,000 a week). Facing a pay reduction, these requirements forced Ms. Edwards to work each day until 5:00 p.m. without a lunch break. *See* **Ex. 2** at ¶ 4. There was no opportunity during that workday to review the new-hire documents. *See* **Ex. 2** at

¶ 4.   After Ms. Edwards finished her workday on April 16, 2020,[1] she followed the instructions provided in her new hire e-mail and clicked on the link provided. Ms. Edwards' personal identifier confirms she reviewed the Acknowledged Documents from 7:34 p.m. to 7:58 p.m., time stamping each one with her email address and at an hour consistent with her work schedule requirements for Harris County. *See* **Ex. 1** at ¶24; *see also* Doc. 11 at 4, Ex. 5 at ¶¶ 2-3.

C.   **Despite Amazon's claims of utilizing AdobeSign, Ms. Edwards' alleged electronic signature is not verified AdobeSign and she did not sign the RAA or MAA (the "Alleged Signed Documents").**

The remaining documents allegedly provided are the "Confidentiality and Invention Assignment Agreement" and the RAA.  Amazon asserts they were sent to Ms. Edwards at the same time as the Acknowledged Documents, yet inexplicably, were executed by an entirely different and undisclosed electronic signature application. Doc. 11 at Ex. 5 ¶ 3.  Indeed, they were not.

1.   *The MAA is neither signed nor acknowledged by any personal identifier.*

Amazon notes that "Plaintiff was required to acknowledge receipt of the summary plan description which includes 'a mandatory company policy requiring certain claims or disputes (that cannot otherwise be resolved between the Company and me) must be submitted to an arbitrator, rather than a judge and jury in the court.'" *See* Doc. 11 at 4.

---

[1] Ms. Edwards initially received the new-hire documents from Amazon on April 14, 2020.  *See* **Ex. 2** at ¶ 2.  Ms. Edwards received another email from the same sender on April 16, 2020, prompting her that she had pending, unreviewed new-hire documents. *See* **Ex. 2** at ¶ 2. The documents contained in both emails are the same, as reflected in **Ex. 2A**.  After the reminder second email, she logged into the review system per both emails' instructions to complete her onboarding process. *See* **Ex. 2** at ¶2.

Despite the binding nature of the MAA, Amazon concedes it was not among the new hire documents provided to Ms. Edwards.  *See* **Exhibit 2** at ¶¶ 2–3; *see* Doc. 11 at 4, Ex. 4.

Because it was not sent, the SPD (and MAA) is blank, despite requesting extensive personal information on the signature page, including address and social security number.  *See* Doc. 11 at Ex. 4.  The only method to review the SPD and MAA is from a hyperlink in the RAA that is allegedly provided to all new hires. Doc. 11 at Ex. 3 (Mark Brown testifies all employees, including Ms. Edwards, have the opportunity to review the SPD via the RAA). If Ms. Edwards never received the RAA, however, she never had "access" to the SPD or MAA.

### 2.  *Ms. Edwards did not sign the RAA.*[2]

The RAA states the employee has read the SPD, among other benefit plans.  *See* Doc. 11 at 6; Ex. 1. It also references the mandatory company arbitration policy.  *See* Doc. 11 at 6; Ex. 1. If Ms. Edwards signed this document, it would prove receipt, but she did not.  *See* **Ex. 2** at ¶¶ 3–4; *see also* **Ex. 1** at ¶31 ("These documents are easily created and have no real way to identify who actually signed the document.").

Amazon relies exclusively on the signature certificate allegedly provided by AdobeSign.  *See* Doc. 11 at 6-7. Yet there are no personal identifiers on the certification and the form of the electronic signature on this document is entirely inconsistent with those generated by AdobeSign.  *See* **Ex. 1** at ¶¶31, 33, **Ex. 1F**.  The certificate simply reflects that someone signed the RAA at 3:07pm.  *See* Doc. 11 at 7.  Notably, this is nearly *five*

---

[2] The same evidence supports the position that Ms. Edwards also did not digitally sign the "Confidentiality and Invention Assignment Agreement."  However, that document is not at issue.

*hours prior* to Ms. Edwards' review of the Acknowledged Documents (documents which Amazon claims were sent at the same time as the RAA) and during a time Ms. Edwards was unavailable.  *See* Doc. 11 at Ex. 5 C-I (each document noting that the document was reviewed by "rene7546@yahoo.com" at 7:34-7:58 p.m.); *see* **Ex. 2** at ¶ 4.  Although Amazon professes to use AdobeSign, as explained above, it does not.  *See* **Ex. 1** at ¶ 31(b) (establishing the Alleged Signed Documents are AdobeSign "Certified" not AdobeSign "Signed"); **Ex. 1** at ¶ 28 ("Digitally signed documents normally have additional metadata which further identifies the signer of the document. These identifiers include IP address used by the signer, email address of the signer, and detailed time stamps.").  Amazon has not produced any metadata to verify Ms. Edwards' alleged electronic signature.  *Cf.* **Ex. 1F** (recreated RAA with additional metadata that is absent from Amazon's evidence).

### III.  SUMMARY OF THE ARGUMENT

Binding arbitration agreements in the virtual world rise and fall on the hidden metadata, which reveals the necessary meeting of the minds.  Without personal identifiers, courts cannot lawfully compel a process that deprives a party of its basic constitutional rights[3] when the evidence establishes the party did not give consent. This case, at its core, involves basic contract formation.  Did the MAA and RAA ever come into existence because both parties agreed to be bound by their clear and definite terms? The answer to both questions is no.  Because both issues center on contract formation (*i.e.,*

---

[3] *See* TEX. CONST. Art. 1, § 15 (Right of Trial by Jury); U.S. CONST., VII Amend. (same).

its existence), this Court has full authority to decide these issues, regardless of any delegation clause.

First, in establishing Ms. Edwards agreed to be bound by the MAA and RAA, Amazon bears the burden of providing conclusive evidence of the efficacy of its security procedure for procuring electronic acknowledgments, signatures, and review of these documents—personal identifiers.  On the other hand, Ms. Edwards' burden is to provide more evidence than "I did not sign that". Ms. Edwards satisfied her burden with expert testimony that her electronic signature on the RAA lack all *required* personal identifiers, namely because although Amazon professed to use AdobeSign, there is no supporting metadata to link the alleged electronic signature to Ms. Edwards, as is required. On this basis alone, the MAA and RAA do not exist, because Ms. Edwards never acknowledged it or agreed to be bound by it.

Second, even if this Court determines Ms. Edwards either signed the RAA or consented by conduct, which she did not, the MAA is nevertheless unenforceable, because it is ambiguous.  All contracts must be definite and clear in their terms to establish there was an offer and it was accepted.  This is the meeting of the minds that is required for any contract to be formed.  The RAA and MAA fail to define the Effective Date in clear and definite terms.  Based on this clear ambiguity, they are unenforceable.

On either ground, this Court should deny Amazon's Motion to Compel Arbitration.

## IV. ARGUMENT AND AUTHORITIES

To compel arbitration, a party must prove that a valid arbitration agreement exists. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018).[4]  In determining whether there is a valid arbitration agreement between the parties, courts apply state contract law. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694 (Tex. 2023); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 431 (5th Cir. 2004); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  For each issue below, Texas law principles of contract formation guide the analysis as to whether the parties agreed to arbitrate. *See Houston ANUSA, LLC v. Shattenkirk*, No. 14-20-00446-CV, 2023 WL 5437714, at *3 (Tex. App.—Houston [14th Dist.] Aug. 24, 2023, no pet. h.).  Amazon incorrectly asserts each element has been satisfied; indeed, not even one.[5]

The MAA failed to form on two separate and mutually exclusive grounds.  First, the evidence clearly shows Ms. Edwards never consented to be bound by the MAA.

---

[4] Even when viewed under the FAA, the party seeking to compel arbitration must establish the existence of a valid arbitration agreement first, as Defendants acknowledge. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 282 (Tex. 2021); *see also* Doc. 11 at 10.  Scope is not a factor in this case, only existence. *See OPE Intern. LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001) (acknowledging two factors are considered in enforcing an arbitration agreement: whether a valid agreement to arbitrate exists between the parties, and whether the dispute is within the scope of the arbitration agreement).

[5] Under Texas law, a binding contract requires: "(1) an offer [Amazon offered an ambiguous agreement vis- a-vis the RAA]; (2) an acceptance in strict compliance with the terms of the offer [Ms. Edwards cannot strictly comply with ambiguous terms and did not sign or receive the MAA or RAA at all]; (3) a meeting of the minds [same]; (4) each party's consent to the terms [same]; (5) execution and delivery of the contract with intent that it be mutual and binding [Ms. Edwards never signed it or intended to be bound by it].  *Huckaba v. Ref-Chem., L.P.*, 892 F.3d 686, 689 (5th Cir. 2018).

Second, when the MAA and RAA are read together, ambiguities arise such that the MAA is not enforceable.

As a preliminary matter, the MAA does not contain a delegation clause, nor would it impact this Court's authority to rule on the MAA's formation as a contract. Both law and policy support that whether an arbitration agreement exists is an issue exclusively reserved for the trial court.

**A.** **The MAA does not contain a delegation clause.**

Courts will only enforce an agreement to delegate issues of scope and enforceability of the contract if the agreement is "clear and unmistakable." *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 521 (Tex. 2019); *see In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) ("Under the FAA, absent unmistakable evidence that the parties intended the contrary, it is the courts rather than arbitrators that must decide 'gateway matters' such as whether a valid arbitration agreement exists.").

Amazon asserts that because the MAA "clearly covers" Ms. Edwards' personal injury claim then a valid delegation clause exists. Doc. 11 at 10–11. This bald assertion, lacking any legal support, misses the mark entirely. Amazon's focus is on scope, which is not at issue. Amazon also wrongly assume there can be no dispute regarding the validity of the MAA. Indeed, that is the sole issue for this Court to resolve.

In contrast, Texas case law establishes that Paragraph 6c of the MAA is not a delegation clause. Courts require "clear and unmistakable" language of the parties' intent to delegate enforceability and contract validity issues to the arbiter. *Firstlight Federal Credit Union v. Loya*, 478 S.W.3d 157, 162, 164 (Tex. App.—El Paso 2015, no pet.)

10

(finding "disputes regarding the validity or enforceability of the Policy" sufficiently clear and unmistakable but finding matters of existence remained with the trial court). Issues of <u>existence</u> (*i.e.*, whether the employee agreed to be bound by the agreement) remain (perhaps always) in the purview of the trial court because that is "an argument directed at the actual making of the contract." *Id.* at 166; *see Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 219 (5th Cir. 2003) ("Where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue.") (emphasis in original); *cf. Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (where the arbitration provision provided that the arbiter decide not only all disputes relating to the interpretation, applicability, enforceability of the agreement, but also all disputes "relating to the . . . formation of this Agreement").

Public policy, as expounded through the FAA and TAA, support the rule that issues of contract formation are "threshold issues to be decided by the court." *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018) (citing *In re Morgan Stanley & Co. Inc.*, 293 S.W.3d 182, 187–88, nn. 5–6) (Tex. 2009). Specifically, the FAA requires a court must be "satisfied that the making of the agreement for arbitration . . . is not in issue" before compelling arbitration. 9 U.S.C. § 4. Likewise, the TAA requires the existence of an agreement to arbitrate be firmly established before the court may compel arbitration. Tex. Civ. Prac. & Rem. Code § 171.021(b). Simply put, it defies public policy to bind a party to terms of an agreement that does not in fact exist.

Here, Paragraph 6(c) of the MAA states:

> Any question as to the arbitrability of any particular claim shall be arbitrated pursuant to the procedures set forth in this Agreement.

Doc. 11 at Ex. 3 ¶6(c). There is nothing clear or unmistakable regarding the delegation of any gateway issues like existence or enforceability. The "procedures set forth in this Agreement" are confined, at best, to the scope of the MAA. This Court can and should decide gateway issues of existence and enforceability.

**B.     The MAA does not exist because Ms. Edwards neither signed it nor agreed to be bound by its terms by her conduct.**

The primary inquiry in determining the MAA's existence is whether Ms. Edwards consented to the Agreement. *See Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n. 21 (Tex. 2018)). After all, despite policies favoring arbitration, it cannot be compelled in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994); *Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 394 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

**1.     *There is no conclusive evidence Ms. Edwards signed the RAA.***

In *Aerotek, Inc. v. Boyd*, the Texas Supreme Court recently established the standard for Texas courts reviewing the efficacy of security procedures utilizing electronic signatures, specifically for binding parties to an arbitration agreement. 624 S.W.3d at 201. Aerotek presented evidence of its computerized hiring application which sends a unique hyperlink to each candidate-for-hire, prompting the candidate to create a personal ID and password, including security questions, to be used for every new-hire document. *Id*. Each must be completed online before the computer allows the employee to move to the next

section of documents. *Id.* at 202–03.  Finally, "Aerotek presented the signed MAAs marked with time stamps identical to those in its database records showing each Employee's progress through the application." *Id.* at 206.  The employees responded with nothing more than an affidavit stating they did not sign it. *Id.*

The Court concluded that a company utilizing electronic contracts must conclusively establish the "efficacy of the security procedures used in generating a contract." *Id.* at 206, 210 (citing TEX. BUS. & COM. CODE § 322.009(a)). This means:

> [S]ecurity procedures may include requiring personal identifying information-- such as a social security number or address--to register for an account; assigning a unique identifier to a user and then tying that identifier to the user's actions; maintaining a single, secure system for tracking user activities that prevents unauthorized access to electronic records; business rules that require users to complete all steps in a program before moving on or completing it; and timestamps showing when users completed certain actions.

*Id.* at 205–06; *see* Elissa Silguero, Insufficient Denial: Evidentiary Weight of Denying an E-Signature Aerotek, Inc. v. Boyd, 624 S.W.3d 199 (Tex. 2021), 40 CORP. COUNS. REV. 225, 225–26 (2021).  Ultimately, the efficacy of the security procedures is "the link between the electronic [computer or database] record . . . and the person to whom the record is attributed." *Aerotek, Inc.*, 624 S.W.3d at 206; *see Houston ANUSA, LLC*, 2023 WL 5437714, at *3.  The resisting party may "offer evidence that security procedures lack integrity or effectiveness," but it must be more than an assertion that they never signed the document. *Aerotek, Inc.*, 624 S.W.3d at 210.

*Aerotek* is instructive, yet distinguishable.  Amazon's evidence of the efficacy of its online security procedures to obtain assent to arbitration is far from conclusive. **Ex. 1** at ¶¶34–35 ("Amazon has nothing that confirms the identity of who signed the Alleged

13

Signed Documents"). Amazon claims to use AdobeSign, but the evidence shows it is something else entirely that cannot be verified or linked to Ms. Edwards. **Ex. 1** at ¶ 31. Indeed, any online application can be utilized to recreate any signature on the RAA and certify it with AdobeSign. **Ex. 1D.** Amazon's signature certificate and proposed signature on the RAA does not look like electronic signatures generated by AdobeSign, lacking the blue signature footer and time stamp, as well as the Final Audit Report. *See* **Ex. 1F (**modeling what an electronic signature generated by AdobeSign is supposed to contain).

Having established Amazon did not actually use AdobeSign, the signature certification simply establishes *someone* signed it at allegedly 3:07 pm, nearly five hours before the rest of the Acknowledged Documents, at a time when Ms. Edwards testified she was unavailable. *See* **Ex. 1** at ¶24; *see* **Ex. 2** at ¶ 4. Amazon presumes the time stamp is from Ms. Edward's computer and that she is the signer. Doc. 11 at Ex. 5 ¶¶ 4–5. Moreover, electronic signatures merely "certified" in Adobe, like the one presented by Amazon, can be back-dated to any execution date as illustrated herein. **Ex. 1** at ¶31, **Ex. 1D.** Amazon also asserts the link in the RAA goes to the SPD/MAA. Doc. 11 at Ex. 5 ¶ 4. Yet, there is no way to verify this statement. There are no eyewitnesses testifying to Ms. Edwards' receipt of the RAA, as in *Aerotek*. These baseless conclusions, which are contradicted here by objective evidence, are not the conclusive evidence envisioned by the Texas Supreme Court, such that Ms. Edwards' constitutional right to a trial by jury may be waived.

By contrast, Ms. Edwards far exceeds her *Aerotek* burden, because she testified under oath she never saw the MAA or RAA and therefore could not have signed the RAA. *See* **Ex. 2** at ¶¶ 2–3.  Ms. Edwards, who goes by her middle name "Rene," would never sign her full legal name in this manner for the specific purpose of preventing fraud. *See* **Ex. 2** at ¶5.  Rather, she intentionally signs all documents "T. Rene Edwards."  *See, e.g.*, **Ex. 2** at ¶ 5, **Ex. 2C**. Indeed, Ms. Edwards' e-mail address, a personal identifier for the Acknowledged Documents, verifies she goes by "Rene Edwards."  *See* Doc. 11 at p. 5.

Additionally, Scott Greene, an expert in the field of technology, computer, and digital forensics, agrees there is nothing to verify Ms. Edwards signed the Acknowledgment Form.  *See* **Ex. 1** at ¶¶ 2, 35–36.  As explained above, Mr. Greene concluded there is no IP address, username, password, or any other personal identifier on the electronic signature that is otherwise and undisputedly provided by AdobeSign. *See* **Ex. 1** at ¶28, 31 ("Amazon has produced no proof that these [Alleged] Signed Documents were signed by Ms. Edwards" and "have no real way to identify who actually signed the document"), **Ex. 1D**. There is "nothing that confirms the identity of who signed the Alleged Signed Documents."  **Ex. 1** at ¶ 35.

Amazon's case authority is equally unpersuasive.  Unlike here, the cases have one thing in common: evidence of personal identifiers within the metadata to authenticate the electronic signature.[6] Further, Amazon's own evidence shows it did *not* use

---

[6] *See, e.g., Zorilla v. Uber Techs., Inc.*, No. 4:16-CV-615, 2017 WL 3278061, at *1, *7 (S.D. Tex. Mar. 16, 2017) (noting evidence of unique log in and password utilized in order to click assent to arbitration and was required before signer could advance past the screen verifying employee clicked "Yes, I agree"); *Thick v. Dolgencorp of Tex., Inc.*, No. 4:16-CV-00733, 2017 WL 108297, at *2 (E.D. Tex. Jan. 11, 2017) (noting defendant provided evidence of social security number and security questions required to log into the system and

AdobeSign as it claims, and without any other evidence to link the electronic signature to Ms. Edwards, Amazon fails to satisfy the *Aerotek* standard. Ms. Edwards cannot be bound by this unverified electronic signature that may be recreated by anyone and back-dated to any date and time. *See* **Ex. 1** at ¶¶ 35–36 ("Nothing in what was provided by Amazon proves that Edwards signed any of the Alleged Signed Documents. Amazon has nothing that confirms the identity of who signed the Alleged Signed Documents.").

    **2.** ***There is no conclusive evidence Ms. Edwards was notified or made aware of the MAA or RAA prior to beginning her employment.***

Even without her signature, Amazon argues Ms. Edwards' consent may be gleaned from her starting employment. Doc. 11 at pp. 13–14. The important inquiry is whether Ms. Edwards received unequivocal notice of the arbitration agreement. *In re Dillard Dep't Stores, Inc.*, 181 S.W.3d 370 (Tex. 2006); *Doe v. Columbia North Hills Hosp. Sub., L.P.*, 521 S.W.3d 76, 81 (Tex. App.—Fort Worth 2017, pet. denied); *Big Bass Towing Co. v. Akin*, 409 S.W.3d 835 (Tex. App.—Dallas 2013, no pet.); *Sporran Kbusco, Inc. v. Cerda*, 227 S.W.3d 288 (Tex. App.—San Antonio 2007, pet. denied). Electronic dissemination can be sufficient, but an employer must be able to prove that an employee received the notice. *See, e.g.*, *Columbia North Hills Hosp. Sub., L.P.*, 521 S.W.3d at 82 (posting arbitration policy on company intranet deemed insufficient, even where employee was instructed to familiarize herself with company policies).

---

plaintiff provided no evidence beyond lack of memory of signing); *Wheeler v. Dollar Tree Stores, Inc.*, No. 6:17-CV-00847, 2017 WL 6813258 (W.D. La. Dec. 14, 2017), *adopted*, No. CV 17-0847, 2018 WL 298785 (W.D. La. Jan. 4, 2018) (finding employee had to reenter password after "click to sign" feature to validate her signature and HR employee testified she guided employee through the process and watched her sign the agreement).

Here, Amazon failed to present any evidence that Ms. Edwards received and reviewed either the MAA or RAA.  Rather, Amazon simply assume this. Doc. 11 at p. 14 (assuming she accepted the terms of the agreement as a matter of law simply by beginning her job, providing neither evidentiary nor legal support). Without a signature, the law requires evidence of an employee's acknowledgment or receipt before it may compel arbitration.

Amazon's misplaced reliance on *Robertson v. Fiesta Restaurant Group, Inc.*, No. 3:17-CV-00384, 2018 WL 3130677 (S.D. Tex. June 8, 2018), *report and recommendation adopted*, No. 3:17-CV-00384 (S.D. Tex. June 26, 2018), supports this unequivocal notice rule. In *Robertson*, there was no dispute the employee received the Employee Handbook containing the mandatory arbitration policy.   2018 WL 3130677, at *4–5. The unambiguous offer letter containing an arbitration section provided additional evidence of notice.  *Id*. at *5. The court concluded the employee agreed to arbitration by continuing employment based on the two unmistakable notifications.   *Id*. (noting neither party disputed the notifications were sent and received).

Likewise, in *In re Dillard Dept. Stores*, the Texas Supreme Court held an arbitration policy is enforceable *if* the employer "establishes that the employee received noticed of its arbitration policy and accepted it." 198 S.W.3d at 780 (finding proper notice "unequivocally communicates to the employee definite changes in the employment terms").  Continuation of work after this unequivocal communication with "knowledge of the modified employment terms" means the employee accepted them as a matter of law. *Id*.  The unequivocal notice in *Dillard Dept. Stores* was physically handing each

17

employee at a meeting the "Rules of Arbitration" and included an acknowledgment form as the cover page. *Id*. The acknowledgment form warned employees that acceptance was deemed by continuing their employment. *Id*. This constitutes "unequivocal communication" and knowledge of the agreement. *Id*. at 780-81 (finding specific facts of employee show she was present at the meeting and acknowledged she received a "packet").

Unlike *Robertson* and *Dillard Department Stores*, there is no evidence of unequivocal communication or notice to Ms. Edwards. Amazon agrees the MAA was never directly sent or provided to Ms. Edwards. Rather, the MAA is referenced in the RAA. As established above, there is no evidence Ms. Edwards received, reviewed, or signed the RAA. *See*, supra, B.1. The MAA cannot exist, because, at a minimum, there was no meeting of the minds between the parties. Therefore, Amazon's Motion to Compel should be denied.

## C.   The MAA and RAA are unenforceable because they are ambiguous.[7]

As with an invalid signature, arbitration agreements are also determined invalid and unenforceable if they are ambiguous. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227-28 (Tex. 2003). Indeed, the presumption favoring arbitration does not even arise until *after* the party seeking to compel arbitration proves a valid agreement exists. *See Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995); *see also Fleetwood Enters.,*

---

[7] There is a "murky line between contract formation and contract validity." *In re Morgan Stanley & Co.*, 293 S.W.3d at 192 (J. Willett, concurring). This Court does not need to distinguish this "murky line," because contract ambiguity falls squarely within the existence arena, as opposed to validity and enforcement. *Firstlight*, 478 S.W.3d at 166.

*Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate; rather, ordinary contract principles are applied). Even if this Court deems Ms. Edwards' alleged electronic signature or notice are valid, which they are not, the MAA and RAA still fail to exist because the Effective Date in the RAA is undefined and ambiguous.

A contract is ambiguous when it is subject to two or more reasonable interpretations, is uncertain, or doubtful, after applying the relevant rules of construction, resulting in a fact issue on the parties' intent. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *see also GSC Wholesale, LLC v. Young*, 654 S.W.3d 558, 564 (Tex. App.—Houston [14th Dist.] 2022, pet. denied). "In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *Lucchese Boot Co. v. Rodriguez*, 473 S.W.3d 373, 385-86 (Tex. App.—El Paso 2015, no pet.) (quoting *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). In other words, the "material terms of the contract must be agreed upon before a court can enforce the contract." *Id.* Courts may not rewrite an agreement to arbitrate or add to its language under the "guise of interpretation." *GSC Wholesale, LLC*, 654 S.W.3d at 564 (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)).

The RAA states:

By my signature below, I acknowledge that I have received and read (or had the opportunity to read or will read the plan on http://w.amazon.com/bin/view/Main/Risk_Management/Workers_Compensation/) the Benefits Schedule, Summary Plan Description (the "SPD") for the Employee Injury Benefit Plan, effective on the Effective Date specified in Item 8 of the Benefits Schedule.

19

> **ARBITRATION**. . . . I understand that by receiving this SPD and becoming employed . . . at any time on or after the Effective Date specified in Item 8 of the Benefits Schedule, I am accepting and agreeing to comply with these arbitration requirements. . . .

Doc. 11 at Ex. 1.  The problem is there is no Item 8 of the Benefits Schedule (or a "Benefits Schedule" for that matter) and, therefore, there is no defined Effective Date.

Exhibit 4 of Amazon's Motion to Compel is titled "Amazon TX Care Employee Injury Benefit Plan / SUMMARY PLAN DESCRIPTION."  Doc. 11 at Ex. 4. To the extent Ms. Edwards even received the SPD, which they did not, the SPD Instructions do not contain a definition for "Effective Date."  Doc. 11 at Ex. 4, p. 40–41.  The only time "8" is referenced is for "Q&A 8," which pertains to requirements for returning to work.  Doc. 11 at Ex. 4, p. 43. The SPD references an Effective Date on page 22, but it does not state whether this is the "Item 8" Effective Date of the RAA. Doc. 11 at Ex. 4, p. 61. The MAA in the SPD describes an effective date, yet is inconsistent with the one referenced elsewhere in the SPD.  Doc. 11 at Ex. 4, p. 62.  These blatant inconsistencies and complete failure to define an "Effective Date" as described in the RAA renders both documents ambiguous because it is subject to two or more reasonable interpretations. Therefore, the MAA does not exist and an arbiter would lack authority over Ms. Edwards' claims. This Court should deny Amazon's Motion to Compel Arbitration.

## V.   Conclusion and Prayer

On two separate grounds Ms. Edwards adequately established that the alleged MAA between her and Defendants simply does not exist or, at best, is unenforceable. Ms.

Edwards respectfully requests this Court deny Defendants' Motion to Compel Arbitration and for any such further relief to which justice or equity may require.

Respectfully submitted,

By:  */s/ Lauren S. Harbour*
     Kirk Pittard
     State Bar No. 24010313
     kpittard@dpslawgroup.com
     DURHAM, PITTARD & SPALDING, LLP
     P.O. Box 224626
     Dallas, Texas 75222
     Telephone: (214) 946-8000
     Facsimile: (214) 946-8433

     Lauren S. Harbour
     State Bar No. 24070649
     lharbour@dpslawgroup.com
     Dana B. Levy
     State Bar No. 24031869
     dlevy@dpslawgroup.com
     DURHAM, PITTARD & SPALDING, LLP
     2638A Rice Blvd, #447
     Houston, Texas 77005
     Telephone: (214) 946-8000
     Facsimile: (214) 946-8433

     and

     Jonathan D. Sneed
     Texas Bar No. 24085594
     jsneed@awtxlaw.com
     Brant J. Stogner
     Texas Bar No. 24038389
     bstogner@awtxlaw.com
     ABRAHAM, WATKINS, NICHOLS, AGOSTO, AZIZ & STOGNER
     800 Commerce St.
     Houston, Texas 77002
     Telephone: (713) 222-7211
     Facsimile: (713) 225-0827
     ***Attorneys for Plaintiff***

21

## CERTIFICATE OF SERVICE

I hereby certify that on **November 7, 2023**, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

Warren T. McCollum
Texas Bar No. 24013127
wmccollum@fenley-bate.com
Fred S. Wilson
Texas Bar No. 00788687
fwilson@fenley-bate.com
FENLEY & BATE, LLP
P.O. Box 450
Lufkin, Texas 75902-0450
*Attorneys for Defendants, Amazon.com
Services, LLC., Amazon Logistics, Inc.,
Amazon.com, Inc.*

*/s/ Lauren S. Harbour*
**Lauren S. Harbour**