**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TERI RENE EDWARDS** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **AMAZON LOGISTICS, INC** | § | |
| **AMAZON.COM SERVICES, LLC** | § | **CIVIL ACTION NO. 4:23-cv-02037** |
| **AMAZON.COM INC** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION**

*Of Counsel:*

Warren T. McCollum
Texas Bar No. 24013127
Fred S. Wilson
Texas Bar No. 00788687
FENLEY & BATE, LLP
P.O. Box 450
Lufkin, Texas 75902-0450
936.634.3346 (Telephone)
936.639.5874 (Fax)
wmccollum@fenley-bate.com
fwilson@feneley-bate.com
ATTORNEYS FOR DEFENDANTS
AMAZON.COM SERVICES, LLC.
AMAZON LOGISTICS, INC.
AMAZON.COM, INC.

## TABLE OF CONTENTS

PAGE

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF THE ISSUES (REPEATED) ................................................. 2

III.   SUMMARY OF THE ARGUMENT ................................................................... 3

IV.    PLAINTIFF DID SIGN THE ARBITRATION ACKNOWLEDGEMENT .................... 4

       A.    Amazon's Onboarding Required Plaintiff Acknowledgment And
             Acceptance of Binding Arbitration Under The Mutual Agreement To
             Arbitrate ................................................................................................... 4

       B.    Texas Law Does Not Require Personal Identifying Metadata Include
             Electronic Signatures ............................................................................. 12

V.     THERE IS DELEGATION CLAUSE WHICH APPLIES ................................. 14

       A.    There is a Delegation Clause Which Applies to the Arbitration Agreement ........ 14

       B.    Amazon's Mutual Agreement To Arbitrate is not Ambiguous ........................... 15

VI.    CONCLUSION AND REQUEST FOR RELIEF ............................................... 20

TABLE OF AUTHORITIES

PAGE

## Cases

*Aerotek, Inc v. Boyd,*
    624 S.W.3d 199 (Tex. 2021)................................................................5, 6, 12, 13, 14

*Allied-Bruce Terminix Companies v. Dobson*,
    513 U.S. 265, 273-274 (1995) .......................................................................................2

*APC Home Health Servs. V. Martinez,*
    600 S.W.3d 381, 390 (Tex. App. – El Paso 2019, no pet.)........................................5

*Arnold v. HomeAway, Inc.,*
    890 F.3d 546, 553 (5th Cir. 2018) ...............................................................................15

*Baby Dolls Topless Saloons, Inc. v. Sotero,*
    642 S.W.3d 583, 587 (Tex. 2022)................................................................................18

*Barker v. UHS Texoma, Inc.,*
    No. 4:18-cv-502, 2019 U.S. Dist. Lexis 92784, at *3-6 (E.D. Tex. June 4,
    2019) .........................................................................................................................5, 6

*In re Capco Energy, Inc.*,
    669 F.3d 274, 279-280 (5th Cir. 2012) ........................................................................2

*Chrysler Ins. Co. v. Greenpoint Dodge of Houston, Inc.,*
    297 S.W.3d 248, 252 (Tex. 2009)................................................................................20

*City of Galveston v. Galveston Mun. Police Ass'n,*
    57 S.W.3d 532, 539 (Tex. App. – Houston [14th Dist.] 2001, pet. denied) ...........20

*Cubria v. Uber Techs,*
    242 F. Supp. 3d 541, 549 (W.D. Tex. 2017)...............................................................15

*In re December Nine Co.,*
    225 S.W.3d 693, 699-700 (Tex. App. – El Paso 2006, no pet.) ................................5

*Edwards v. Doordash, Inc.*,
    888 F.3d 738, 744 (5th Cir. 2018) ...............................................................................15

*Falcone v. Top 1 Percent Coaching, LLC.,*
    No. 2:19-cv-303-FtM-29MRM, 2020 U.S. Dist. Lexis 117851, at *7 (M.D.
    Fla 2020) ....................................................................................................................11

*Falk & Fish, LLP v. Pinkston's Lawnmower & Equip.,*
    317 S.W.3d 523, 527 – 28 (Tex. App. – Dallas 2010, no pet.)................................20

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938, 944 (1995)............................................................................................2

*Fischer v. CTMI, L.L.C.*,
479 S.W.3d 231, 239 (Tex. 2016)........................................................................18, 20

*Holmes v. Air Liquide USA LLC.*,
No. H-11-2580, 2012 U.S. Dist. Lexis 10678, at *10 (S.D. Tex. Jan. 30, 2012) ...........4, 5, 11

*Howsam v. Dean Witter Reynolds.*,
537 U.S. 79, 83-84 (2002) ........................................................................................3

*J.M. Davidson, Inc. v. Webster*,
128 S.W.3d 223, 227 (Tex. 2003)............................................................................18

*Jody James Farms, JV v. Altman Grp., Inc.*,
547 S.W.3d 624, 633 (Tex. 2018)..............................................................................2

*Kalenga v. Irving Holdings, Inc.*,
No. 3:19-CV-1969-S, 2020 U.S. Dist. Lexis 239681, at *21 (N.D. Tex. Dec.
20, 2020........................................................................................................16, 17, 18

*Nexstar Broad. Inc. v. Fid. Communs. Co.*,
376 S.W.3d 377, 382 (Tex. App. – Dallas 2012, no pet.).......................................19

*Jody James Farms, JV v. Altman Grp., Inc.*,
547 S.W.3d 624, 633 (Tex. 2018)..............................................................................2

*ReadyOne Indus v. Flores*,
460 S.W.3d 656, 664 (Tex. App – El Paso 2014, pet. denied) ................................19

*Shin-Con Dev. Corp. v. I.P. Invs., Ltd.*,
270 S.W.3d 759, 765 (Tex. App. – Dallas 2008, pet. denied) ................................16

*Sparrow v. EK Real Estate Servs.*
No. 4:22-CV-00046-SDJ-CAN, 2023 U.S. Dist. Lexis 70933, at *28-30 (E.D.
Tex. Feb. 9, 2023) ....................................................................................................15

*Vollmering v. Assaggio Honolulu, LLC.*,
No. 2:22-CV-00002 U.S. Dist. Lexis 184938, at *16 (S.D. Tex. Sep. 17, 2022).....................4

**Statutes**

Federal Arbitration Act (9 U.S.C.A. §§ 1 – 402)...................................................................

iii.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **TERI RENE EDWARDS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **CASE NO. 4:23-CV-2037** |
| | § | |
| **AMAZON LOGISTICS, INC** | § | |
| **AMAZON.COM SERVICES, LLC.** | § | |
| **AMAZON.COM INC,** | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION**

Defendants, **AMAZON LOGISTICS, INC, AMAZON.COM SERVICES, LLC &
AMAZON.COM, INC** ("Defendants" or "Amazon") file this reply[1] to Plaintiff **TERI RENE
EDWARDS** ("Plaintiff" or "Edwards") Response (Doc. No. 13) to Defendants' Motion to Compel
Arbitration (Doc. No. 11) ("Motion") and would show as follows.

**I.
INTRODUCTION**

On May 5, 2023, Edwards filed suit in the 333rd Judicial District Court of Harris County
alleging she sustained injuries on June 25, 2021 while employed with Defendant. (Doc. No. 1, Ex.
A to Defendant's Notice of Removal, Section VI). Edwards brings an action against Defendant
based upon common law negligence. (Doc. No. 1, Ex. A to Defendant's Notice of Removal,
Section VII). However, Edwards acknowledged and agreed to binding arbitration as the sole means
of resolving any claims arising out of her employment with Amazon.

---

[1] Defendants file this reply ten days after Edwards' response in compliance with Judge Hanen's Rule 7D.

1

Edwards does not contest the claims in her suit fall within the scope of the arbitration agreement. Rather, she chooses to challenge her electronic signature acknowledging the arbitration agreement. She acknowledges reviewing employment policies on the evening of April 16, 2020, but, to the best of her recollection, cannot recall reviewing the arbitration agreement. Defendants' digital and circumstantial evidence, presented both in its Motion and in this reply, demonstrate Edwards' execution of the arbitration acknowledgment.

## II.

## STATEMENT OF THE ISSUES (Repeated)

**A.**     Whether the arbitration agreement is covered by the Federal Arbitration Act ("FAA").

> The FAA applies to all transactions involving commerce. *Allied-Bruce Terminix Companies v. Dobson,* 513 U.S. 265, 273-74 (1995).[2]

**B.**     Whether there is an agreement to arbitrate between the Plaintiff and Defendants.[3]

> The court examines whether an agreement exists through application of Texas Contract law. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) & *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012).

**C.**     Whether there is a delegation clause within the arbitration agreement that delegates issues related to who the arbitration agreement applies and whether the claims asserted by the Plaintiff are covered by the arbitration agreement.[4]

> The court applies state law to determine whether the agreement expressed an intent to delegate whether a claim is arbitrable and who the agreement applies. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1955) *Jody James Farms, JV v. Altman Grp., Inc.,* 547 S.W.3d 624, 633 (Tex. 2018)

---

[2] Edwards does not concede this issue, yet offers no argument that the FAA does not apply. (Doc. No. 13 at vii).

[3] Edwards concedes Texas Contract law applies and focuses her response on the existence of an agreement. (Doc No. 13 at vii)

[4] Edwards does not believe the delegation clause applies to the issues to be decided. (Doc No. 13 at vii).

D.      If there is not a delegation clause, whether the arbitration agreement applies to the Defendants.

>      Whether the agreement applies to the parties is considered a gateway issue whereby the agreement and the complaint are examined. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002).

E.      If there is not a delegation clause, whether the arbitration agreement applies to the causes of action asserted by the Plaintiff.[5]

>      Whether the agreement applies to the claims asserted by the parties is considered a gateway issue whereby the agreement and the pleadings are examined. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002).

## III.

## SUMMARY OF ARGUMENT

Edwards correctly frames the issue with regard to her signature when she states in her response: (Doc No. 13 at vii) (highlighting added),

D.  Whether the Arbitration Agreement contains an unambiguous delegation clause is immaterial to whether the Arbitration Agreement exists at all. If Ms. Edwards never signed or agreed to the Arbitration Agreement, the contract does not exist. The issue for this Court to resolve is whether Defendants provided conclusive evidence of the efficacy of their online security procedures, and whether Ms. Edwards provided sufficient evidence to show she did not sign or receive the Arbitration Agreement or Acknowledgment Form.

There is no dispute that Edwards was sent an email with a link to Amazon's MyDocs platform and that she was required to create a password prior to reviewing any documents. There is no dispute that she reviewed employment policies (Scott Greene refers to same as Acknowledged Documents) and acknowledged review of those documents on April 16, 2020 between 7:34 pm and 7:58 pm. Amazon's security measures requiring password creation along with the method by which the adobe Sign Agreements (arbitration acknowledgement, confidentiality agreement and

---

[5] Edwards contends the arbitration agreement is ambiguous due to a typographical error on the arbitration acknowledgment as to the location of the effective date within the document. (Doc No. 13at vii).

3

terms of employment) are presented to Amazon Associates more than meets the required evidentiary showing of efficacy regarding online security procedures. Amazon's MyDocs data shows Edwards' signature on the Adobe Sign Agreements at 8:07 pm on April 16, 2020, and further shows that, despite Edwards' inability to recall the arbitration acknowledgment or agreement to the "best of [her] knowledge and recollection," she agreed to be bound by the arbitration agreement. (Doc No. 13, Ex 2).

Whether or not the arbitration agreement is ambiguous, that issue is delegated to the arbitrator for resolution. Should the court decline to delegate the issue, case law establishes that a mere typographical error cannot serve to render the arbitration agreement unenforceable. Rather, the agreement should be read as a whole, each provision considered in the context of the others, to determine the effective date.

**IV.**

**<u>PLAINTIFF DID SIGN THE ARBITRATION ACKNOWLEDGMENT</u>**

**A.**     **Amazon's Onboarding Required Plaintiff's Acknowledgment And Acceptance Of Binding Arbitration Under the Mutual Agreement to Arbitrate.**

Edwards claims that Amazon did not present conclusive proof of her execution of the arbitration acknowledgment. Amazon disagrees. However, the point is moot. The law does not require that Amazon present conclusive proof of Edwards' acknowledgment. Amazon need only prove its case by a preponderance of the evidence. *Vollmering v. Assaggio Honolulu, LLC*, No. 2:22-CV-00002, 2022 U.S. Dist. Lexis 184938, at *16 (S.D. Tex. Sep. 17, 2022) ("The party seeking arbitration [] bears the burden of showing, by a preponderance of evidence, that the arbitration agreement exists"); *see also Holmes v. Air Liquide USA LLC,* No. H-11-2580, 2012

U.S. Dist. Lexis 10678, at *10 (S.D. Tex. Jan. 30, 2012) ("[T]he Court finds that the Defendants have met their burden of establishing, by a preponderance of evidence, that a valid agreement to arbitrate exists between the parties").[6]

Even if Amazon were required to present conclusive proof, Amazon has met that burden. Edwards' response supports Amazon's contention that she did in fact sign the arbitration acknowledgment. Edwards' response presents evidence of two emails which prove that Amazon provides a link to their onboarding platform MyDocs. After following that link, she was required to create a password. (Doc. No. 11, Ex. 5 ¶ 2 & Ex. 1 ¶ 4). She recalls reviewing employment documents sent by Amazon during the evening hours (Doc. No. 13, Ex. 2). Unlike the employees in *Aerotek* who unequivocally testified to never receiving or executing the arbitration agreement,[7] Edwards merely testifies "[t]o the best of [her] knowledge and recollection . . ." she does not recall seeing the arbitration acknowledgment. (Doc #13, Ex. 2). Testifying "I don't recall" is not the same as testifying unequivocally it did not happen. See *In re December Nine Co.,* 225 S.W.3d 693, 699-700 (Tex. App.—El Paso 2006, no pet.) (finding that employees' inability to recall signing acknowledgement or reviewing arbitration policy was insufficient to overturn employer's proof of signed arbitration agreement). "Not recalling executing a document is different from denial of execution." *APC Home Health Servs. v. Martinez*, 600 S.W.3d 381, 390 (Tex. App.—El Paso 2019, no pet); *see also Barker v. UHS Texoma, Inc*, No. 4:18-cv-502, 2019 U.S. Dist. Lexis 92784,

---

[6] In *Aerotek, Inc v. Boyd,* 624 S.W.3d 199 (Tex. 2021), the Texas Supreme Court stated that Aerotek conclusively proved "the only way a person could access each Employee's information was through a secret combination of unique user ID, password and security question known only to the Employee." *Id.*, 208. However, nowhere in the opinion does the Texas Supreme Court state that conclusive proof is, or ever was, the standard. The court was merely remarking that, because Aerotek had conclusive proof, there could be no question as to the employees' consent to arbitrate their claims.

[7] *Aerotek*, 624 S.W.3d at 202 ("[E]ach [plaintiff] submitted a sworn declaration acknowledging that he had completed the online hiring application but *denying* that he had ever seen, signed, or been presented the [arbitration agreement]." (emphasis added)).

at *3-6 (E.D. Tex. June 4, 2019) (during deposition, employee could not recall reviewing arbitration agreement, and the court compelled arbitration stating "[t]he more likely explanation is that [employee] received notice of the Arbitration Policy and no longer remembers these events.").[8] Edwards' inability to swear under oath that she unequivocally did not sign the arbitration acknowledgment is further proof that, much like the claimants in the cases cited directly above, she does not know if she signed the arbitration acknowledgment. She does not aver that Amazon has fraudulently affixed her signature to the arbitration acknowledgement, she simply claims that Amazon cannot prove she did sign it. Edwards cannot be allowed to escape her bargained for obligations by arguing to the effect of "I may or may not have signed, I don't remember, but you can't prove it anyway."

MyDocs is a program which presents the arbitration agreement, the confidentiality agreement, and the terms and conditions of employment to Amazon Associates. (Ex.1, Declaration of David Cowen, ¶ 4). While the Associate signs each agreement separately, they are required to click a box once they are done signing all three, indicating completion. Adobe Sign then creates a pdf. (Ex.1, ¶¶ 5, 7). MyDocs has a system whereby it can track when documents are signed. MyDocs shows that Edwards signed these documents at 8:07 pm central time on April 16, 2020. (Ex. 1, ¶ 5, Ex. 1B).

---

[8] In *Aerotek,* 624 S.W.3d at 209, the Texas Supreme Court stated that the employee's mere denials of their electronic signature were not sufficient to counter Aerotek's proof of security procedures in the hiring platform.



Now, the properties for Exhibit 1 to Defendants' Motion reflect a signature time of 15:07:25 – 05'00'. After receipt of Edwards' response, it was learned that Amazon's servers are set to UTC time. (Ex. 2, November 15, 2023 Declaration of Mark Brown). This time remains static and avoids the necessity of Amazon having to adjust times given the presence of employees in

many time zones and the use of day light savings time by some locations. (Ex. 1, ¶ 9). Mark Brown did not know this when he made his initial declaration, nor did he know the significance of the "05'00'" following the military time.  (Ex. 2).

Defendants noted the time difference between the Adobe Sign properties and the other employment documents referred to as "Acknowledged Documents" by Scott Greene. Defendants located eight files of other employees which showed the same 5-6 hour time difference. However, these files show "06'00'" after the military times because the time changed from day light savings time to standard time on November 5, 2023. The properties of the Edwards acknowledgment were examined during daylight savings time, the properties for the other associates were examined after the change to Standard Time. (Ex. 1, ¶ 9). The properties change based upon the time change due to the server being set at UTC. For instance, below is the current properties for the Edwards acknowledgment.[9]



[9] If the court so desires, Defense counsel will email a native version of the arbitration acknowledgment and any other documents that are attached to the motion. Due to the ECF filing parameters, Defendants cannot file native versions of any attachments.

Regardless, the other employee files show a similar time difference between the Adobe Sign Agreements (arbitration acknowledgment, confidentiality agreement and terms of employment) and the Acknowledged Documents for each of the employees. This further supports that the Acknowledged Documents were signed just prior to execution of the Adobe Sign Agreements by Edwards; the comparison of other employee Adobe Sign Agreements and Acknowledged Documents shows the 5-6 hour difference is consistent among different employees and supports the fact that the Amazon Server is set to UTC time. The log from MyDocs shows not only that Edwards signed the Adobe Sign Agreements but also shows Edwards' (Ex. 1B):

- first use was April 16, 2020 at 7:31 pm;

- last log in to MyDocs was July 16, 2021 at 1:44 pm;

- Adobe Sign logs show her one and only transaction was April 16, 2020 beginning at 7:31 pm and ending at 8:07 pm; and

- reviewed and acknowledged the Amazon Security Awareness policy, Approved Time off policy, attendance policy, computer use policy, Owner's Manual, and workplace policies and procedures between 7:34:46 and 7:58:42, consistent with the Acknowledged Documents reviewed by Edwards' expert Scott Greene (Doc # 13, Ex. 1 ¶5 & Ex. 1B).

Edwards' expert, Scott Greene, complains there is not additional metadata to support Edwards' execution of the arbitration acknowledgment. While Edwards' attorney was provided the native version of the confidentiality agreement, Scott Greene notably leaves out that the properties for the confidentiality agreement also show to be completed at 15:07:36 – 05'00', supporting Amazon's position that both were completed at the same time. (Ex.1, ¶ 9 n.1). Mr. Greene complains there is not IP Address for the execution of the arbitration acknowledgment.

9

While evidence that is not required under the law, it is now moot, because Defendants searched and located the IP address. (Ex. 1B Pg. 4 & Ex. 4 ¶2 & 4B, Pg 5).

IP Details For: 172.58.99.96

| | |
|---|---|
| Decimal: | 2889507680 |
| Hostname: | 172.58.99.96 |
| ASN: | 21928 |
| ISP: | T-Mobile USA Inc. |
| Services: | None detected |
| Assignment: | Likely Static IP |
| Country: | United States |
| State/Region: | Texas |
| City: | Houston |
| Latitude: | 29.7630 (29° 45′ 46.90″ N) |
| Longitude: | -95.3621 (95° 21′ 43.42″ W) |

Scott Greene, the purported expert, then contends that the arbitration acknowledgment was not executed using Adobe Sign. Mr. Greene appears to lack expertise with Adobe or chose not to research the issue. Adobe's settings allows its users to choose whether to include the date and time stamp underneath the signature on a signed document or to simply show the signature itself. Defendants checked the Amazon MyDocs Adobe software settings and determined setting that

injects the date and time stamp under the signature was disabled. (Ex. 1B at 4). What Mr. Greene conveniently leaves out of his affidavit that Adobe Sign can be used to confirm the validity of the signature by merely moving the cursor over the signature and following the URL to Adobe's website. Mr. Greene most certainly reviewed the native version of the arbitration acknowledgment and the confidentiality agreement[10] and moved his cursor over the signature.  (Ex. 3, Declaration of McCollum, Ex. B). He then discovered that the URL confirming the validity of the signature on both documents was the same.[11] There is no requirement that the signature contain the date and time it was signed as Mr. Greene claims.

While Edwards claims she always signs her name T. Rene Edwards, such a claim has little weight in evidence when compared to the evidence that she signed the Adobe Sign Agreements on April 16, 2020. *See Falcone v. Top 1 Percent Coaching, LLC*, No. 2:19-cv-303-FtM-29MRM, 2020 U.S. Dist. Lexis 117851, at *7 (M.D. Fla 2020) (Employee asserted he couldn't have signed the arbitration agreement because it was not signed the way he customarily signs documents). As set forth in David Cowen's declaration, MyDocs is set by default to fill in the signature line with the full name of the applicant. Of the other Adobe Sign Agreements (confidentiality agreement and terms of employment)[12], which Edwards does not deny signing, she signed them  in the same fashion.

In *Holmes v. Air Liquide USA LLC*, No. H-11-2580, 2012 U.S. Dist. Lexis 10678 (S.D. Tex. Jan. 30, 2012), the employee did not recall an arbitration agreement and did not recall agreeing to arbitration.  *Id.* at *8.  The employee argued that the court could not be certain the

---

[10] Counsel for Edwards demanded production of the native version of the Confidentiality Agreement on October 26, 2023 and same was produced by the undersigned to Counsel for Edwards that same day. (Ex. 3B 10-26 email)

[11] The URL is the same on the native version of the arbitration acknowledgment, confidentiality agreement and the terms of employment, all signed by Edwards using Adobe sign. (Ex. 1, ¶ 12).

[12] *See* Exhibit 1C1.

electronic signature was hers. The court found that, while conceivable that someone else could have signed for the employee, a unique log in and password was needed to access the agreement and sign it. *Id.* at *10. The need for access to unique login information, known only to the employee, was sufficient evidence to make it "highly unlikely" someone else signed her name. *Id.* "Notwithstanding Plaintiff's statement that she does not recall signing an ADR agreement, the Court finds that Defendants have met their burden of establishing, by a preponderance of evidence, that a valid agreement to arbitrate exists between the parties." *Id.* In the instant case, Defendants have presented evidence that following receipt of an email, which Edwards concedes receiving, and clicking the link, MyDocs requires creation of a unique and confidential password to access the documents at issue. Defendants have also presented evidence as to the date and times when the Adobe Sign Agreements were signed by Edwards.  Her admission to having signed Acknowledged Documents after 5 pm on April 16, 2020 aligns with Defendants' MyDocs data that shows execution of the Acknowledged Documents between 7:34 pm and 7:58 pm on April 16, 2020.  The timing of Edwards' execution of the Acknowledged Documents is also consistent with her signature of the Adobe Sign Agreements at 8:07 pm on April 16, 2020.  In short, Defendants have met, if not exceeded, their burden to show an agreement between Edwards and Defendants to arbitrate her claims in this case.

### B.  Texas Law does not require personal identifying metadata include electronic signatures.

Edwards misstates Texas law when she overemphasizes the importance of metadata in proving up electronic signatures. While the employer in *Aerotek* had certain metadata contained within some of the electronic signatures of the employees who unequivocally denied signing arbitration agreements, the Texas Supreme Court most certainly did not state metadata was required to prove up an electronic signature when an employee unequivocally denies their

electronic signature. Rather, the court was focused on the security measures in place to limit access to employee accounts to only those who possessed the log in and password. Further, the Supreme Court did not require specific security systems be in place but rather stated "security procedures *may* include…" *Aerotek,* 624 S.W.3d at 205. The court did not require any specific security procedures, only "[a] record that cannot be created or changed without unique, secret credentials can be attributed to the one person who holds those credentials." *Id*. at 206. This is the one area where there is no dispute. Edwards acknowledges entering the MyDocs portal and completing the Acknowledged Documents. She could not accomplish that without creating a password. (Doc. No. 13, Ex. 2; Doc. No. 11, Ex. 5, ¶ 2 & Ex. 1, ¶ 4 to this Reply). The MyDocs security measures satisfy the *Aerotek* security requirements. Further, like the employees in *Aerotek*,[14] Edwards does not deny execution of any agreement other than the arbitration acknowledgment. "In sum, Aerotek's evidence of the security procedures for its hiring application and its operation is such that reasonable people could not differ in concluding that the Employees could not have completed their hiring applications without signing the [arbitration agreements]. The Employees' simple denials are no evidence otherwise." *Id.* at 209. Edwards' admission to reviewing the Acknowledged Documents through the same MyDocs portal not more than 45 minutes[15] before she is shown by the MyDocs portal as electronically signing Adobe Sign Agreements is additional evidence that even Aerotek did not have to support their motion to compel arbitration. Amazon also presented the IP Address for the signer of the arbitration acknowledgment which was obtained from the Adobe Account, capturing it as a part of a signature request. (Ex. 4, Declaration of Cravalho) Aerotek did not have an IP Address. Thus, even applying the higher "conclusive

---

[14] *Aerotek, Inc v. Boyd,* 624 S.W.3d 199, 206 (Tex. 2021)

[15] The MyDocs Portal data shows review of the Acknowledged Documents between 7:34 pm and 7:58 pm. The MyDocs Portal data shows completion of the Adobe Signed Agreements at 8:07 pm. (Ex. 1B at 1-3).

evidence" standard—a standard which Amazon is not required to meet—to the electronic signature from Edwards, Amazon more than satisfies the standard through the aforementioned evidence, most of which the employer in *Aerotek* lacked.

## V.

### THERE IS DELEGATION CLAUSE WHICH APPLIES

**A.**     **There is a Delegation Clause which applies to the Arbitration Agreement.**

Edwards claims the delegation clause does not apply to the issues before the court. However, the arbitration agreement contains a different delegation clause than the clause previously discussed, one which 5th Circuit precedent has already deemed applicable. The arbitration agreement states: "All arbitrations under this Agreement shall be administered by the American Arbitration Association ("AAA") under its rules for the resolution of disputes." (Doc. No. 11, Ex. 4, App. A, p. 2, ¶ 7)[16]. AAA Employment Rules provide as follows regarding the Arbitrator's authority (Ex. 3A at 12):[17]

6. Jurisdiction

   a.  The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

   b.  The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

   c.  A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

---

[16] The paragraph further states that if AAA is unwilling or unable to serve, Judicial Arbitration and Mediation Services will serve.

[17] While the Arbitration Agreement does not specify which AAA Rules apply, the Employment Arbitration Rules state, "The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes…" (Ex. 3Aat 7)

Edwards argues in her response that the delegation clause must be clear and unmistakable. While Amazon believes the delegation clause found in paragraph 6c of the Mutual Agreement to Arbitrate is clear and unmistakable, it is irrelevant. The law provides that the AAA delegation clause applies to arbitration agreements where the agreement calls for AAA to administer the arbitration. See *Cubria v. Uber Techs*, 242 F. Supp. 3d 541, 549 (W.D. Tex. 2017) (finding incorporation of AAA Rules and delegation clause based on inclusion of the following language in the arbitration agreement: "The arbitration will be administered by the [AAA] in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules"…))

The Fifth Circuit Court of Appeals has repeatedly found inclusion of the AAA rules within the arbitration agreement constitutes the "clear and unmistakable evidence" Edwards contends is missing from the delegation clause in paragraph 6c of the Mutual Agreement to Arbitrate. *See Arnold v. HomeAway, Inc*, 890 F.3d 546, 553 (5th Cir. 2018) ("Because the April 2016 Terms expressly incorporate the AAA rules, the parties have clearly and unmistakably demonstrated their intent to delegate); *see also Edwards v. Door Dash, Inc*, 888 F.3d 738, 746 (5th Cir. 2018); *Sparrow v. EK Real Estate Servs.*, No. 4:22-CV-00046-SDJ-CAN, 2023 U.S. Dist. Lexis 70933, at *28-30 (E.D. Tex. Feb. 9, 2023). When the issue presented to the court is not a contract formation issue and there is a valid delegation clause, the issue is delegated to the arbitrator for decision. *Edwards v. Door Dash, Inc*, 888 F.3d 738, 746 (5th Cir. 2018).  Ambiguity of a contract is not a formation issue and is an issue to be considered under delegation by an arbitrator.

**B.**     **Amazon's Mutual Agreement to Arbitrate is not ambiguous.**

In her search to locate an argument to avoid arbitration, Edwards asserts that the Arbitration Agreement is ambiguous. Her sole contention for ambiguity rests on a typographical error.

Edwards contends that because the arbitration acknowledgment references Item 8[18] in the Benefit Schedule as the location of the effective date of the agreement, and that because Item 8 does not contain the effective date, the agreement is ambiguous. The effective date of the agreement is February 1, 2019; updated March 1, 2020. (Ex. 4A, pg ii, Benefit Schedule).To Edwards credit, there is no Item 8 to which she could have looked to find the effective date of the agreement. However, the effective date can be found in the Summary Plan description Appendix A, as well as in the first paragraph of the Mutual Agreement to Arbitrate itself. (Doc. No. 11, Ex. 4at 22-23). The text of the agreement states it is effective February 1, 2019. (Doc. No. 11, Ex. 4, App. A, p. 1 ¶ 1). Even if the typographical error as to Item 8 did subject the agreement to more than one interpretation, a perfectly reasonable interpretation is that the arbitration agreement was effective February 1, 2019 and updated on March 1, 2020, given that those are the only dates that appear anywhere in the agreement But the truth is, there is only one interpretation of the effective date of the agreement, the agreement is not ambiguous, and Edwards is grasping at straws.

Other than there being a difference between the two dates, both of which fall before both April 16, 2020 when the acknowledgment was signed by Edwards, and her June 14, 2021 incident, there is no practical significance. In order for the agreement to be found unenforceable, it must be "'so indefinite as to make it impossible for the court to determine the legal obligations of the parties[.]'" *Kalenga v. Irving Holdings, Inc*, No. 3:19-CV-1969-S, 2020 U.S. Dist. Lexis 239681, at *21 (N.D. Tex. Dec. 20, 2020) (*quoting Shin-Con Dev. Corp. v. I.P. Invs., Ltd.*, 270 S.W.3d 759, 765 (Tex. App.—Dallas 2008, pet. denied)). The legal obligations of the parties are clearly spelled out in the arbitration agreement. The agreement provides that:

---

[18] The benefit schedule reflects the effective date to be under Item 6.

- The agreement applies to Amazon and Edwards (Doc. # 11, Ex. 4 App A, p. 1);

- The agreement applies to claims that Edwards would have against Amazon, its managers, employees, officers, agents, affiliates, associates, etc. *Id.*;

- The agreement is accepted by receipt of notice and commencement of work or receipt of notice after commencing work and continuing employment. *Id.*;

- An employee is someone employed by the company. *Id.*;

- What activities constitute being in the course and scope of employment. *Id.*;

- What claims are covered by the arbitration agreement. *Id.*;

- What claims are not covered by the arbitration agreement. (Doc. No. 11, Ex. 4, App. A, p. 2);

- Who will administer the arbitration and how the arbitrator will be selected. *Id.*;

- Where the arbitration is to take place. *Id.*;

- Who is to pay for the arbitration. *Id.*;

- The discovery devices that are available to Amazon and Edwards. (Doc. No. 11, Ex. 4, App. A, p. 3);

- The remedies and defenses available to the parties. *Id.*; and

- Whether the award is written and how it will be enforced. *Id.*

In *Kalenga v. Irving Holdings, Inc*, No. 3:19-CV-1969-S, 2020 U.S. Dist. Lexis 239681, at *19-20 (N.D. Tex. Dec. 20, 2020)[19], the arbitration agreement stated that the commencement date was set forth in Section 1 of the agreement, but Section 1 had no such date. The plaintiff

---

[19] Of note, this arbitration agreement was implemented after the representative plaintiff brought a class action under the FLSA. The employer rolled out the arbitration agreement and class members signed the agreement. The plaintiff here had a relevant issue as to the commencement date, as if the agreement commenced on the date it was signed, class member claims would not be subject to arbitration.

argued the agreement was ambiguous and unenforceable. *Id.* at 20. The District Court for the Northern District of Texas found that the agreement applied to the period of time the drivers were employed by the defendant. The court found "acts of acceptance of the Arbitration Agreement are either: (1) commencement of services; or (2) continuation of services for at least three days after notice. Employment, whether commenced or continued, is the event from which the parties' duties flow." *Id.* at 21 (internal citations omitted) (internal quotations omitted). Here, the parties' obligations to each other, just like in *Kalenga*, flow from Edwards' acts of acceptance, which is her review of the arbitration acknowledgment and commencing employment. Further, under Texas contract law, the discrepancy in dates does not make the agreement ambiguous.

"Arbitration agreements are interpreted under traditional contract principles." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). The Supreme Court of Texas has set out three guiding principles for determining whether a contract's terms are sufficient to constitute an enforceable contract. *Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 587 (Tex. 2022) (citing *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016)).

> "First, courts cannot rewrite the parties' contract but must construe it as a whole to determine the parties' purposes when they signed it. Second, courts should construe contracts to avoid forfeitures, which are disfavored under Texas law, and instead find terms to be sufficiently definite whenever the language is reasonably susceptible to such an interpretation. And third, when courts construe agreements to avoid forfeiture, they may imply terms that can be reasonably implied."

*Id.* (internal citations omitted). Regarding the third guiding principle, the Texas Supreme Court has noted that "[e]xpressions that at first appear incomplete or uncertain are often readily made clear and plain by the aid of common usage and reasonable implications of fact. For example, courts often imply a term setting . . . a reasonable time during which the contract will remain effective." *Fischer*, 479 S.W.3d at 239 (internal citations and quotations omitted).Thus, the Mutual

Agreement to Arbitrate is not so ambiguous as to be unenforceable for multiple reasons. First, because courts should construe contracts to avoid forfeitures, this Court should find that the effective date of the agreement is the date listed multiple times through the Summary Plan Description in which the arbitration agreement is contained—February 1, 2019, updated March 1, 2020. (Doc. No. 11, Ex. 4,  p. 22, and on the cover page; Ex. 4  Appx., p. 1). The agreement is "reasonably susceptible to such an interpretation" because the first paragraph of the Mutual Agreement to Arbitrate, the very agreement at issue, states "[t]he effective date of this Mutual Agreement to Abitrate is February 1, 2019." (Doc. No. 11, Ex. 4, Appx. A, p.1). It is clear that, although the Receipt and Arbitration Acknowledgement erroneously directed Edwards to Item 8 of the benefits schedule to find the effective date, the intended effective date of the agreement was February 1, 2019. "[L]ack of clarity or even inartful drafting will not alone render an agreement to be ambiguous." *Nexstar Broad. Inc. v. Fid. Communs. Co.*, 376 S.W.3d 377, 382 (Tex. App.—Dallas 2012, no pet.). When the Receipt and Arbitration Acknowledgment is considered together with the entire agreement—the Summary Plan Description and the Mutual Agreement to Arbitrate—is it apparent that the term "Effective Date" refers to February 1, 2019. *See ReadyOne Indus. v. Flores*, 460 S.W.3d 656, 664 (Tex. App.—El Paso 2014, pet. denied) (finding that an undefined term in an arbitration agreement does not make the agreement ambiguous where it is clear, upon review of the entire agreement, what the undefined term is referring to).

Second, even if the effective date of the Mutual Agreement to Arbitrate is found, "at first," to be uncertain because of a simple typographical error,[20] it is "readily made clear and plain by …

---

[20] "With respect to typographical errors, 'written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document and to this end, words, names, and phrases obviously intended may be supplied.'" *Falk & Fish, L.L.P. v. Pinkston's Lawnmower & Equip.*, 317 S.W.3d 523, 527-28 (Tex. App.—Dallas 2010, no pet.) (citing *City of Galveston v. Galveston Mun. Police Ass'n*, 57 S.W.3d 532, 539 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

reasonable implications of fact." *See Fischer*, 479 S.W.3d at 239. Even though Item 8 of the benefits schedule does not actually contain the effective date of the agreement, it can be reasonably implied from the Summary Plan Description and paragraph 1 of the Mutual Agreement to Arbitrate itself that the effective date is February 1, 2019. (Doc. No. 11, Ex. 4, p.22; Ex. 4, Appx. A, p.1). If this Court finds that a typographical error in the Receipt and Arbitration Acknowledgment does introduce some lack of clarity as to the effective date of the arbitration agreement, it should construe the agreement to avoid forfeiture—as instructed by the policy and precedent of the Texas Supreme Court—by implying that the effective date is the date listed in the first paragraph of the agreement itself, under the heading "Effective Date and Acceptance Date." (Doc. No. 11, Ex. 4, Appx. A, p.1). "Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law." *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009).The arbitration agreement is not ambiguous. Regardless, the delegation paragraph contained within the arbitration agreement or incorporated through AAA's rules calls for the issue of whether the agreement is ambiguous to be determined by the arbitrator.

## VI.
## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Defendant requests that this Court compel Plaintiff to arbitrate her claims in accordance with the terms of the Agreement. Defendant further request that this action be stayed pending the resolution of Plaintiff's claims through binding arbitration.

Respectfully Submitted:


_____/s/Warren T. McCollum_____
WARREN T. MCCOLLUM
Texas SBN:    24013127
FRED WILSON
Texas SBN:    00788687
FENLEY & BATE, L.L.P.
P.O. Box 450
Lufkin, Texas 75902-0450
TPN:  (936) 634-3346
FXN:  (936) 639-5874
TXSD Admission No.: 769985
Email: wmccollum@fenley-bate.com

ATTORNEY FOR DEFENDANT
**AMAZON.COM SERVICES LLC.**
**AMAZON LOGISTICS, INC**
**AMAZON.COM, INC**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this the 17th day of November 2023, served a true and correct copy of the foregoing to:

Jonathan Sneed
State Bar No. 89994
800 Commerce St.
Houston, Texas 77002
Email: jsneed@awtxlaw.com

☐ By certified mail
☐ By regular mail
☐ By overnight mail
☒ By Email
☐ By Facsimile
☐ By Electronic Delivery

Lauren Harbour
State Bar No. 24070649
Dana Levy
State Bar No. 24031869
2638A Rice Blvd, #447
Houston, Texas 77005
Email: lharbour@dpslawgroup.com
          dlevy@dpslawgroup.com

☐ By certified mail
☐ By regular mail
☐ By overnight mail
☒ By Email
☐ By Facsimile
☐ By Electronic Delivery

Kirk Pittard
State Bar No. 24010313
P.O. Box 224626
Dallas, Texas 75222
Email: kpittard@dpslawgroup.com

☐ By certified mail
☐ By regular mail
☐ By overnight mail
☒ By Email
☐ By Facsimile
☐ By Electronic Delivery

_____/s/Warren T. McCollum_____
WARREN T. MCCOLL