DocuSign Envelope ID: DFA41210-EA47-41BB-80C1-A8F6BBAA7129

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TERI EDWARDS** | § | |
| | § | |
| **VS.** | § | **CAUSE NO. 4:23-CV-2037** |
| | § | |
| **AMAZON.COM, INC;** | § | |
| **AMAZON.COM SERVICES, LLC;** | § | |
| **AND AMAZON LOGISTICS, INC.** | § | |

## DECLARATION OF JEFFREY CRAVALHO

1. My name is Jeffrey Cravalho. I am a Manager, GRMC Support and employed by the Defendant, **AMAZON.COM SERVICES, LLC.**, hereinafter, **AMAZON**. I have personal knowledge of the matters contained in this Declaration or I have knowledge based upon my personal review of **AMAZON'S** records or data kept in the regular course of business, and if called to do so, can testify competently to the same. All business records personally reviewed by me are kept in the course of **AMAZON'S** regular conducted business.

2. Attached as Exhibit A to my declaration is the AmazonTXCare Employee Injury Benefit Plan effective February 1, 2019; updated March 1, 2020.

3. Attached as Exhibit B are records transmitted to me by Rahul Deswal, IT Application Analyst for the Amazon Team that administers the MyDocs platform. He has access to all of the screen shots from MyDocs, the Adobe settings and the Adobe Sign Account which are found in pages 1-4 of Exhibit B. Attached in pages 5 and 6 of exhibit B are communications through Amazon's Chime system delineating his efforts to locate the materials found in pages 1 through 4 of Exhibit B. Rahul Deswal obtained the IP address for the signer's computer through Amazon's Adobe Account. (Ex. B, Pg 5)

4. Attached as Exhibit C to David Cowen's declaration are portions of employment records for eight Amazon Associates who also accessed employment policies (Acknowledged Documents) and Adobe Signed Agreements (arbitration acknowledgment/Arbitration Agreement/SPD, confidentiality agreement and terms of employment) through MyDocs from August 7, 2019 to November 27, 2021 Except for Teri Edwards records, these records have been redacted to remove identifying information for the employees and their full email addresses.

5.   I declare under the penalty of perjury and the laws in the State of Texas and the United States of America that the foregoing is true and correct.

**EXECUTED THIS** ____17th____ day of November, 2023, at ____Overland Park____, ____Kansas____.

DocuSigned by:

*Jeffrey Cravalho*

**JEFFREY CRAVALHO**

2

# Exhibit A

# AmazonTXCare
# Employee Injury Benefit Plan

**THIS PLAN IS A COMPONENT OF THE AMAZON.COM SERVICES, INC.
GROUP HEALTH & WELFARE PLAN (NO. 502)**

**Benefit Schedule - AmazonTXCare Employee Injury Benefit Plan**

1.    **Employer Name, Address and Telephone Number**:
      Amazon.com Services, Inc.[1]
      Address: 410 Terry Ave N, Seattle, WA 98109
      Phone: (206) 266-1000

2.    **Federal Tax Identification Number**:  See Schedule "A" of the Plan

3.    **Name and Telephone Number of Contact Person for Participant Questions**:
      Byron McBride, Anchor Risk & Claims Management
      1-800-275-3193

4.    **Name and Address of Agent for Service of Legal Process**:
      Corporation Service Company d/b/a/ CSC – Lawyers Incorporating Service
      211 East 7th Street, Suite 620, Austin, TX 78701-3218

5.    **Plan number**: 502

6.    **Effective Date of Plan**:  February 1, 2019; updated March 1, 2020

7.    **Combined Benefit Period**: 156 weeks

8.    **Disability Benefits**:
      ➢  Waiting Period: 0 days
      ➢  Percentage of Pre-Injury Pay:  85%

9.    **Death or Dismemberment Benefit Limit**:      $250,000

10.   **Combined Benefit Amount for All Benefits**:
      ➢  Combined Benefit Amount Per Participant: $250,000
      ➢  Combined Benefit Amount Per Occurrence: $750,000

11.   **Covered Classes**:  All employees of Employer residing in Texas.

12.   **Covered State**:  Texas

**Important Notice:  All benefits are subject to the terms and conditions of the Official Plan Document.  Please see the Official Plan Document for other benefit limitations and exclusions.**

---

[1] Employer shall include Amazon.com Service, Inc. and any of its wholly-owned subsidiaries or controlled group members of the Company, as defined in Internal Revenue Code section 414(b) or (c), which are designated by the Plan Administrator as participating Employers in Schedule A of the Plan, which may be amended from time to time without a formal written amendment to the Plan.

**TABLE OF CONTENTS**

ARTICLE I – PURPOSE & FUNDING INTRODUCTION ........................................................... 1

ARTICLE II – DEFINITIONS ................................................................................................... 1

ARTICLE III – PARTICIPATION, REPORTING, CONDITIONS & REQUIREMENTS ...................... 6

3.1     Commencement of Participant ...................................................................................... 6

3.2     Cessation of Participation. ........................................................................................... 6

3.3     Reporting. ................................................................................................................... 6

3.4     Conditions & Requirements ......................................................................................... 7

3.5     Termination of Employment. ....................................................................................... 7

ARTICLE IV – BENEFITS, AND EXCLUSIONS ...................................................................... 7

4.1     General Provisions. ..................................................................................................... 7

4.2     Benefits. ..................................................................................................................... 7

4.3     Limitations on Benefit Amount Per Participant and Per Occurrence. ............................. 7

4.4     Exclusions from Benefits under the Plan. ..................................................................... 8

4.5     Disability Benefits. .................................................................................................... 10

4.6     Medical Expense Benefit. ........................................................................................... 11

4.7     Accidental Death & Dismemberment Benefits. ........................................................... 12

4.8     Forfeiture of Benefits. ............................................................................................... 13

4.9     Coordination of Benefits. ........................................................................................... 14

4.10    Immediate Medical Assistance. ................................................................................. 14

4.11    Acceptance of Medical Treatment. ............................................................................ 14

4.12    Subrogation and Reimbursement. .............................................................................. 14

ARTICLE V – ADMINISTRATION OF THE PLAN ................................................................. 16

5.1     Plan Administrator. ................................................................................................... 16

5.2     Discretionary Rights and Duties. ............................................................................... 16

5.3     Documents. ............................................................................................................... 17

5.4     Indemnification. ........................................................................................................ 17

ARTICLE VI – CLAIMS ....................................................................................................... 17

6.1     Claims Procedure. ..................................................................................................... 17

6.2     Timing of the Notice of Denial. .................................................................................. 18

6.3     When a Claim is Received. ........................................................................................ 18

6.4     Manner of Giving Notice. .......................................................................................... 18

6.5     Time of Determination of Claims. .............................................................................. 18

6.6     Notice of Adverse Benefit Determination. .................................................................. 20

6.7     Appeal Procedures. ................................................................................................... 21

6.8     Benefit Determination on Review. .............................................................................. 22

6.9     Manner and Content of Notification of Benefit Determination On Review. .................... 22

| | | |
|---|---|---|
| 6.10 | Calculating Time Periods. | 23 |
| 6.11 | Relevance. | 23 |
| 6.12 | Rights of Recovery. | 24 |
| 6.13 | Exhaustion of Administrative Remedies | 24 |
| 6.14 | Participant's Responsibilities. | 24 |

**ARTICLE VII – AMENDMENT AND TERMINATION** .................................................................. 24

| | | |
|---|---|---|
| 7.1 | Amendment. | 24 |
| 7.2 | Termination. | 24 |

**ARTICLE VIII – MISCELLANEOUS** .................................................................. 25

| | | |
|---|---|---|
| 8.1 | Creditors. | 25 |
| 8.2 | No Contract of Employment. | 25 |
| 8.3 | Heirs. | 25 |
| 8.4 | Headings. | 25 |
| 8.5 | Gender. | 25 |
| 8.6 | Controlling Law. | 25 |
| 8.7 | Assets. | 25 |
| 8.8 | Expenses. | 25 |
| 8.9 | Offset. | 26 |
| 8.10 | No Admission of Liability. | 26 |
| 8.11 | Severability. | 26 |

**SCHEDULE A – PARTICIPATING EMPLOYERS** .................................................................. 27

## ARTICLE I – PURPOSE & FUNDING INTRODUCTION

Amazon.com Services, Inc. ("Amazon" or the "Company") sponsors and maintains the AmazonTXCare Employee Injury Benefit Plan (the "Plan"). The Plan, originally effective as of February 1, 2019, is intended to constitute an employee welfare benefit plan as defined in section 3(1) of the Employee Retirement Income Security Act of 1974, as amended to provide benefits to eligible Employees who are injured in a work-related incident, while performing their job. The Plan is the exclusive remedy for work-related injuries and provides Disability Benefits, Medical Expense Benefits, and Accidental Death and Dismemberment Benefits to Participants or their Beneficiaries.

The Company intends to continue the Plan indefinitely, but necessarily reserves the right to amend or terminate the Plan, for any reason, in whole or in part, at any time without notice. In the case of any conflict between the terms and provisions of this Plan and the terms and provisions of the summary plan description, this Plan document will control and govern.

## FUNDING POLICY

The amount, timing and source of funding for the Plan are determined by the Company in its sole and absolute discretion. The Plan Benefits are payable out of the general assets of the Company and participating Employers. Nothing in the Plan will be construed to require the Company, any participating Employer or the Plan Administrator to maintain any fund or to segregate any amount for the benefit of any Employee, Participant or Beneficiary and with regard to this Plan, no Employee, Participant or Beneficiary or any other person has any claim against, right to, or security or other interest in, any fund, account or assets of the Company or any participating Employer. The Company shall have no obligation, but shall have the right to obtain insurance contracts with one or more insurers in order to provide funds to the Company to reimburse the Company for or to pay certain Benefits under the Plan. Any such insurance contract shall be owned by the Company and no Employee, Participant or Beneficiary shall have any interest in or right to any benefits payable under such contract.

## ARTICLE II – DEFINITIONS

Certain words used in this document have specific meanings. These terms will be capitalized throughout the document. The definition of any word, if not defined in the text where it is used, may be found in this Definitions section.

"**ACCIDENT**" means an injury to a Participant which: (1) was unforeseen and unexpected; (2) occurred at a specifically identifiable time and place; (3) occurred by chance, unexpectedly, and/or not in the usual course of events; (4) was caused by an external factor associated with Participant's work or with the workplace, (5) resulted directly in Injury to the Participant; (6) occurred in the course and scope of the covered Participant's assigned duties and employment with the Employer; (7) occurred during the pendency of the Plan; and (8) for which medical treatment with an Approved Provider under the Plan (not AmCare or other similar arrangements) was initiated within 30 days of the Injury producing event. Accident does not include Occupational Disease or Cumulative Trauma, except under the limited circumstances identified below. Accident does not include injuries or ordinary diseases of life to which the general public is exposed outside the Participant's assigned duties in his or her Scope of Employment.

"**ACTIVE SERVICE**" means an Employee is either 1) actively at work performing all regular duties either at the Employer's place of business or someplace the Employer requires him or her to be; or 2) actively at work performing restricted or modified duty work at the direction of the Employer in the course of his or her Scope of Employment.

"**ADVERSE BENEFIT DETERMINATION**" means any of the following: (i) a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for a benefit under the Plan, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a Participant's eligibility to participate in the Plan; (ii) a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit under the Plan, resulting from

the application of Pre-Certification procedures or other utilization review procedures; and (iii) a failure to cover an item or service for which benefits under the Plan are otherwise provided because it is determined to be experimental and/or investigational or not Medically Necessary or because another exclusion applies under the Plan.

"**ADVERSE BENEFIT DETERMINATION ON REVIEW**" means the upholding or affirmation of an Adverse Benefit Determination by the Plan Administrator or its designated appeals administrator.

"**APPROVED PROVIDER**" means an authorized health care provider approved by the Plan Administrator who is acting within the scope of his or her license or credentials (as applicable) and rendering care or treatment to a Participant for his or her Injury that is appropriate for the conditions and locality. It does not include a Participant or a member of the Participant's immediate family or household.

"**BENEFICIARY**" means the individual entitled to any death benefits payable under this Plan, as determined under the applicable laws of the State of Texas.

"**BENEFIT(S)**" means the Disability Benefits, Medical Expense Benefits, and Accidental Death and Dismemberment (AD&D) Benefits described in Article IV.

"**BENEFIT DETERMINATION**" means a determination by the Claims Administrator on a Claim for Benefits under the Plan, whether or not an Adverse Benefit Determination.

"**BENEFIT DETERMINATION ON REVIEW**" means a determination by the Plan Administrator or the appeals administrator designated by the Company on an appeal of an Adverse Benefit Determination, whether or not an Adverse Benefit Determination On Review.

"**CLAIM**" shall mean any request for a Benefit made by a Participant or Beneficiary or by an authorized representative of a Participant or Beneficiary that complies with the Plan procedures for making a Benefit claim with the Claims Administrator.

"**CLAIMS ADMINISTRATOR**" shall mean the Claims Administrator appointed by the Plan Administrator.

"**COMBINED BENEFIT AMOUNT PER OCCURRENCE**" is the combined aggregate of all Benefits for any Occurrence (including, but not limited to Medical Expense Benefits, Disability Benefits, Accidental Death and Dismemberment Benefits) available because of an Accident, Occupational Disease and or Cumulative Trauma, regardless of the number of Participants, and shall not exceed $750,000.

"**COMBINED BENEFIT AMOUNT PER PARTICIPANT**" is the maximum amount of Benefits available to a
Participant or a Participant's Beneficiary for each Occurrence under this Plan.

"**COMBINED BENEFIT PERIOD**" means the period of time within which Covered Charges must be incurred and/or Disability Benefits are payable after an Injury, subject to the terms, limitations, and restrictions of the Plan. The Combined Benefit Period begins on the date the Injury occurred and ends no later than one hundred fifty-six (156) weeks after the date of the Injury. A separate Combined Benefit Period will start for each Injury.

"**COMPANY**" shall mean Amazon.com Services, Inc.

"**COVERED CHARGE**" means those Medically Necessary treatments, services and supplies that are prescribed by an Approved Provider and actually incurred by the Participant during the Combined Benefit Period and subject to the Combined Benefit Amount Per Participant and Combined Benefit Amount Per Occurrence. A Covered Charge shall be deemed to have been incurred on the date the Medically Necessary treatment was rendered, a service given or a supply delivered. Pre-approved expenses for mileage,

transportation, food and lodging will be included as "Covered Charges." The determination of whether a treatment, service or supply is a Covered Charge will be made by the Claims Administrator, in its sole discretion.

"**CUMULATIVE TRAUMA**" means damage to the physical structure of the Participant's body occurring as a result of repetitious, physically traumatic activities that occur in the Scope of Employment with the Employer and independent of all other causes. Cumulative Trauma does not include an Accident or Occupational Disease.

"**DEPENDENT**" and "**DEPENDENT CHILD(REN)**" respectively mean the Participant's Spouse and/or unmarried children who are under age nineteen (19); or who are between the ages of nineteen (19) and twenty-five (25) if he or she is enrolled as a fill-time student in an accredited college, university, vocational or technical school and relies on the Participant for more than 50% of his or her support; or who is older than age 25 but is incapable of self-sustaining employment by reason of mental or physical disability or handicap.

"**DISABLED**" or "**DISABILITY**" or "**TOTAL DISABILITY**" means a Participant is not able to perform, at any time during the Combined Benefit Period, any of the material and substantial duties of the Participant's occupation, business, or employment which the Participant held at the time of Injury due to an Accident while in the Scope of Employment.

"**EFFECTIVE DATE**" of this Plan is February 1, 2019; updated March 1, 2020.

"**ELIGIBLE WAGES**" for purposes of calculating Disability Benefits means: (i) with respect to Hourly Employees (not eligible for commissions): the Employees base hourly rate of pay at the time of the Accident, including overtime pay, includes any sign on bonuses, (ii) with respect to Hourly Employees with commission eligibility: the Employee's base hourly rate of pay at the time of the Accident, overtime pay, includes sign on bonuses, and any commissions received within the prior 8 weeks before the Accident; and (iii) with respect to Salary Employees: the Employee's base salary, including commissions and sign on bonus. Disability wages are calculated using an average amount of compensation over the 8 weeks prior to the Accident. Discretionary Bonuses and/or other "extra" compensation received by those Participants will NOT be included as an Eligible Wage for Disability Calculation purposes.

"**EMPLOYEE**" is a person directly employed by the Employer in its regular business and who receives his or her pay on a regular basis by means of a salary or wage directly from the Employer, receives a W-2 from the Employer for reporting to the Internal Revenue Service, and whose salary or wage is subject to all applicable state and federal income taxes. An Employee does not include subcontractors or independent contractors, whether they are contracted for the Employer on an occasional, part-time or full-time basis or any individual who is not treated by the Employer as an employee for payroll tax purposes at the time he or she performs services for the Employer (including those individuals paid by a temporary or other staffing agency), whether or not such individual is subsequently determined by a government agency, by the conclusion or settlement of threatened or pending litigation, or otherwise to be or have been a common-law employee of the Employer during such period. An Employee does not include a third-party agent.

"**EMPLOYER**" shall mean the Company and any of its wholly-owned subsidiaries or controlled group members of the Company, as defined in Internal Revenue Code section 414(b) or (c), which are designated by the Plan Administrator as participating Employers in Schedule A, which may be amended from time to time without a formal written amendment to the Plan.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended, and the regulations and other authority issued thereunder by the appropriate governmental authority. Reference to any section of ERISA shall include references to any successor section of ERISA.

"**HOSPITAL**" means an institution which meets all of the following conditions: (i) it is engaged primarily in providing medical care and treatment to the injured person on an inpatient basis at the patient's expense;

(ii) it is constituted, licensed and operated in accordance with the laws of jurisdiction in which it is located which pertain to Hospitals; (iii) it maintains on its premises all the facilities necessary to provide for the diagnosis and medical and surgical treatment of an Injury; (iv) such treatment is provided for compensation by or under the supervision of Physicians with continuous twenty-four (24) hour nursing services; (v) it is a provider of services under Medicare; and (vi) it charges patients for its services.

A Hospital is not, other than incidentally, a place for rest, a place for the aged, a place for drug addicts, a place for alcoholics, or a nursing home.

"**INJURY**" means identifiable damage or harm to the physical structure of the body that is incurred solely as the result of a covered Occurrence or Accident. The term does not include: 1) any mental trauma, emotional distress or similar injury; or 2) a heart attack, stroke, aneurysm or seizure. The Injury must be caused solely by an Accident or Occurrence. All injuries sustained by one Participant in any one Accident, including all related conditions and recurrent symptoms of these injuries, are considered a single Injury.

"**MAXIMUM REHABILITATIVE CAPACITY**" means the earliest date after which, based upon reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated.

"**MEDICAL EXPENSE**" an expense, incurred by a Participant as a direct result of an Injury due to an Accident or Occurrence, for medical or dental services, procedures, supplies, or prescription drugs, provided the expense is Medically Necessary, Usual and Customary, and prescribed by an Approved Provider.

"**MEDICALLY NECESSARY**" means that a service, procedure, medicine, prescription drug, or supply is necessary and appropriate for the diagnosis or treatment of an Injury based on generally accepted current medical practice. A service, medicine or supply will not be considered Medically Necessary if it: (i) is provided only as a convenience to a Participant or a provider; or (ii) is not appropriate treatment for a Participant's diagnosis or symptoms; or (iii) exceeds, in scope, duration or intensity, that level of care which is needed to provide safe, adequate and appropriate diagnosis or treatment.

The fact that any particular Physician or health care provider may prescribe, order, recommend, or approve a service or supply does not make the service or supply Medically Necessary. The determination of whether a service, procedure, medicine, prescription drug, or supply is Medically Necessary will be made by the Claims Administrator in its sole discretion.

"**NEW INJURY**" with respect to a Pre-existing Condition means a medically diagnosed change in the physical structure of the body caused by an Accident or Occurrence.

"**OCCUPATIONAL DISEASE**" means a disease that is caused solely from the performance of the Participant's regular duties of his or her job and causes damage or harm to the physical structure of the body. It does not include ordinary diseases to which the general public is exposed outside the Participant's regular duties of his or her job. It does not include an Injury resulting from an Accident or Cumulative Trauma. For purposes of this Plan, the date of an Occupational Disease is deemed to be the date on which the Participant was last exposed to the disease producing agent or agents in his or her occupational environment. All Occupational Diseases suffered by any one Participant due to exposure to the same or related disease producing agent or agents present in his or her occupational environment within his or her Scope of Employment are deemed to be a single Occupational Disease.

"**OCCURRENCE**" means an Accident or series of Accidents arising out of one event causing Injury to one or more Participants, or an Occupational Disease or Cumulative Trauma causing Injury to one or more Participants.

"**OTHER INCOME BENEFITS**" means any amounts that a Participant or a Participant's Dependents receive (or are assumed to receive) under:

A.      Any Workers' Compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted. If paid as a lump sum, these benefits will be prorated over the period for which the sum is given. If no time is stated, the lump sum will be prorated over a five-year period. If no specific allocation of a lump sum is made, then the total sum will be an Other Income Benefit.

B.      Any Social Security or retirement benefits the Participant receive or any third party receives (or is assumed to receive) on the Participant's behalf or for the Participant's Dependents; or, if applicable, that the Participant's Dependents receive (or are assumed to receive) because of the Participant's entitlement to such benefits.

C.      Any proceeds payable under any employer group health or welfare plan, group insurance or similar plan. If there is other coverage or insurance that applies to the same Claim for Benefits under this Plan, and contains the same or similar provision for reduction because

of other coverage or insurance, this Plan will pay its pro rata share of the total Claim. "Pro rata share" means the proportion of the total Benefit under this Plan that the amount payable without other benefits, coverage or insurance, bears to the total benefits under all such sources.

"**PARTIALLY DISABLED**" refers to a Participant who remains Disabled from working full-time, but is able to return to work on a part-time basis or earns less than his or her pre-Injury wage.

"**PARTICIPANT**" means an Employee eligible to participate and who is covered under the Plan pursuant to Article 3 and has not for any reason become ineligible to participate further in the Plan.

"**PHYSICIAN**" means a licensed medical doctor acting within the scope of his or her license rendering care or treatment that is appropriate for the conditions and locality. Physician does not include a Participant or a member of the Participant's immediate family or household.

"**PLAN**" means the AmazonTXCare Employee Injury Benefit Plan, as it may be amended from time to time.

"**PLAN ADMINISTRATOR**" means the Plan Sponsor or its designee.

"**PLAN SPONSOR**" means the Company.

"**PLAN YEAR**" means the 12-month period commencing April 1 and ending March 31. Notwithstanding the foregoing, there shall be an initial short Plan Year commencing February 1, 2019 and ending March 31, 2019.

"**PRE-CERTIFICATION**" means a program whereby prior to incurring Covered Charges due to Hospital admission (other than an admission of emergency care) physical therapy, MRI, CAT Scan, sonogram, or other such testing, the Participant or an Approved Provider will obtain authorization from the Claims Administrator.

"**PRE-EXISTING CONDITION**" means a condition caused by, or diagnosed to be, a condition or injury for which the Participant (1) experienced symptoms or (2) received medical treatment, care or advice prior to the date the Participant's coverage became effective under the Plan.

"**SCOPE OF EMPLOYMENT**" means an activity of any kind or character that involves or has to do with and originates in the work, business, trade or profession of the Employer and that is performed by the Employee while engaged in or about the furtherance of the affairs or business of the Employer. Travel between Employer's locations for business purposes is included in the Scope of Employment. Scope of

Employment does not include deviations from regular employment. Scope of Employment includes only an activity in which an Employee engages in the carrying out of the Employer's business which is reasonably foreseeable by the Employer. Scope of Employment does not include an Employee's transportation to and from the Employee's residence and the Employee's workplace. The Employee's reporting to work and leaving work are in the Scope of Employment as long as that Employee is on the Employer's premises. Scope of Employment does not include Accidents occurring off the Employer's premises, such as sidewalks and parking lots, unless Employer maintains and is responsible for keeping in good working order. Scope of Employment also includes commercial aircraft to and from places and events covered by this provision.

"**SPOUSE**" means a Participant's (i) lawful spouse from a legal union validly formed in any jurisdiction unless legally separated, or (ii) domestic partner as defined for eligibility purposes in the Amazon.com Services, Inc. Group Health & Welfare Plan.

"**URGENT CARE CLAIM**" means a Claim for medical care or treatment that, if not received, (i) could seriously jeopardize the life or health of the Participant or the ability of the Participant to regain maximum function; or (ii) in the opinion of an Approved Provider with knowledge of the Participant's medical condition, would subject the Participant to severe pain that cannot be adequately managed without the care or treatment that is the subject of the claim. If an Approved Provider with knowledge of the Participant's medical condition deems the medical care or treatment urgent, then the claim is an Urgent Care Claim. This does not include routine medical care that takes place at an urgent care clinic.

"**USUAL AND CUSTOMARY CHARGE**" means the usual charge made by a Physician or other licensed health care provider acting within the scope of his or her license of treatment, services, procedures, supplies, medicine or prescription drugs that does not exceed the general level of charges made by other Physicians or Approved Providers rendering or furnishing such care or treatment within the same geographic area. The determination of whether the charge for a treatment, service, procedure, medicine, prescription drug, or supply is Usual and Customary shall be made by the Claims Administrator in its sole discretion.

## ARTICLE III – PARTICIPATION, REPORTING, CONDITIONS & REQUIREMENTS

**3.1      Commencement of Participant**.

An individual who is coded in the Employer's payroll system as an Employee residing in the State of Texas and is in Active Service on the Effective Date of the Plan shall become a Participant in the Plan as of the Effective Date. An individual who becomes an Employee coded in the Employer's payroll system as residing in the State of Texas after the Effective Date of the Plan shall become a Participant on the date on which he or she is first in Active Service in the State of Texas. No enrollment forms are necessary.

**3.2      Cessation of Participation.**

Participation in the Plan ceases on the earliest of the following dates:

➢ Participant's voluntary separation of employment or termination for cause with an Employer;
➢ The date the Company terminates the Plan; or
➢ The date on which Participant no longer meets the requirements set forth in Section 3.1.

**3.3      Reporting.**

A Participant must immediately report any Accident (regardless of the nature or severity), Cumulative Trauma or Occupational Disease from a known cause or exposure to his or her manager or other person designated by the Plan Administrator in accordance with the time frames and procedures specified in the Employer's workplace accident and injury policy, as it may be updated from time to time, which is generally no later than the end of the shift and in no instance later than 3 days following the date of Accident. Failure

to immediately report an Accident, Occupational Disease or Cumulative Trauma may result in the denial of Benefits and subject the Participant to disciplinary action up to and including termination.

**3.4     Conditions & Requirements**

In addition to the reporting requirements set forth in Section 3.3 above, a Participant is required to comply with any and all procedures, conditions and requirements of the Employer related to workplace Accidents or Occupational disease as well as any procedures, conditions and requirements of the Claims Administrator including, but not limited to drug and alcohol screening, seeking timely treatment and complying with ongoing treatment by an Approved Provider (not AmCare), undergoing return to work assessments and complying with such assessments. Failure to comply with any and all procedures, conditions and requirement of the Employer and the Claims Administrator may result in the denial of Benefits and disciplinary action up to and including termination.

Initial receipt and continuing receipt of Benefits is contingent upon compliance with the terms and conditions of the Plan. A Participant who fails to comply with the conditions and requirements herein shall not be entitled to receive or continue to receive Benefits.

**3.5     Termination of Employment.**

Once approved, Benefits under the Plan continue until the Claim is closed regardless of an Employee's employment status. Upon termination of employment with an Employer, a Participant will no longer be eligible under the terms of Section 3.1.

## ARTICLE IV – BENEFITS, AND EXCLUSIONS

**4.1     General Provisions.**

The Plan shall apply to Accidents, Cumulative Trauma and Occupational Disease sustained by Participants in the furtherance of the business of the Employer by a Participant who is in Active Service of the Employer and is subject to all terms and conditions of the Plan. The Plan specifies the only Benefits for which a Participant is eligible in the event of such Accident, Cumulative Trauma or Occupational Disease. The Plan document shall govern in all cases concerning eligibility and Benefits, including limitations and exclusions. Provision of Benefits to a Participant pursuant to this Plan shall not constitute an admission of liability on the part of the Employer. The Plan Administrator reserves the right to condition payment of any Benefits hereunder on the Participant (or his estate or beneficiary) executing an acknowledgment to this effect if permitted by law.

**4.2     Benefits.**

Plan Benefits shall consist of the provision of Disability Benefits (defined in Section 4.5) for periods of Disability resulting from Injury, Medical Expense Benefits (defined in Section 4.6) for Covered Charges by an Approved Provider for an Injury, and applicable Accidental Death and Dismemberment Benefits (defined in Section 4.7).

**4.3     Limitations on Benefit Amount Per Participant and Per Occurrence.**

The Combined Benefit Amount Per Participant of all possible Benefits under this Plan (including, but not limited to, Disability Benefits, Medical Expense Benefits, and Accidental Death and Dismemberment Benefits) payable to a Participant or on his or her behalf shall not exceed $250,000 per Occurrence. The Combined Benefit Amount Per Occurrence (including, but not limited to Disability Benefits, Medical Expense Benefits, and Accidental Death and Dismemberment Benefits) available because of an Accident, Occupational Disease and or Cumulative Trauma, regardless of the number of Participants affected, shall not exceed $750,000.

**4.4    Exclusions from Benefits under the Plan.**

The following are excluded from Benefits under the Plan. No Benefits will be paid for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following:

1.      Any Claim that is not timely reported pursuant to Section 3.3 of the Plan and the claims procedures.

2.      Repetitive motion and Cumulative Trauma Injuries unless the Participant has worked in the job position which Participant claims caused the Injury for at least 180 days.

3.      Pre-existing conditions unless there must be evidence that the Accident caused a New Injury.  A Pre-Existing Condition will not be covered under this Plan if (1) the Participant received treatment for the condition for which Participant seeks coverage during the 6 months prior to the date of the Accident or Occurrence, or (2) the condition has been previously diagnosed or, (3) there is no evidence of a New Injury.

4.      Hearing loss unless it falls under the definition of an Accident or is diagnosed by an Approved Provider as resulting solely from Participant's job with the Employer.

5.      Liability arising out of employment relationships including, without limitation, claims for any type of discrimination, discharge, coercion, criticism, demotion, reassignment, discipline, defamation, harassment, humiliation, sexual harassment, claims arising under the U .S. Americans with Disabilities Act, claims arising out of the Texas Labor Code and all other claims affecting or arising out of the employment relationship whether rising out of state or federal statues or regulations or the common law.

6.      Any workers' compensation law, unemployment compensation law, disabilities benefits law or other similar law.

7.      An intentionally self-inflicted Injury, Occupational Disease or Cumulative Trauma caused or intentionally aggravated by Participant.

8.      A Participant's participation in: (i) an assault or a felony, except an assault committed in defense of the Employer's business or property; (ii) any act of terrorism; (iii) any illegal act; (iv) service in the military of any country or any civilian non-combatant unit serving with such forces; or (iv) horseplay.

9.      Directly or indirectly, contributed by, caused by, resulting from, or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss: (i) war, invasion, terrorism, acts of foreign enemies, hostilities, or warlike operations (whether war be declared or not), civil war, mutiny, revolution, rebellion, insurrection, uprising, military or usurped power, confiscation by order of any public authority or government de jure or de facto, martial law, or; (ii) riots, strikes, or civil commotion; or (iii) an act of God.

10.     Accident, Occupational Disease or Cumulative Trauma occurring while the Participant has in his blood or urine any amount of alcohol, illegal drug, or a chemical substance that is obtained or consumed in violation of the U.S. Controlled Substances Act in force at the time and location of the occurrence, or if Participant has in her or her blood or urine any prescription medication where that medication, amount of medication, or the manner of use of that medication has been prohibited by the Employer's Alcohol and Drug Policy.

11.     Accident, Occupational Disease or Cumulative Trauma to a Participant while employed in violation of law, including but not limited to working without a valid H-1B visa or after such visa has expired, or working as an undocumented immigrant.

12.     The following exposure related items: (i) asbestos, asbestos fibers or asbestos products; (ii) lead or lead based products; (iii) the hazardous properties, including radioactive, toxic or explosive properties, of nuclear materials; (iv) mold; or (v) any and all medical conditions that are associated with silica related conditions, this is to include exposure to any all material, which also is known as silica dust, exposures to respirable crystalline silica, exposure to silicosis, exposure to mold, exposure to materials that may cause lung cancer, pulmonary tuberculosis, and airway diseases, autoimmune disorders, chronic renal disease, or other health conditions that are associated with exposure to silica based materials.

13.     All statutory or common law causes of action including the following:

      a.     breach of any contract of employment, whether written, oral or implied.

      b.     breach of duty of good faith and fair dealing.

      c.     breach of any non-competition agreements.

      d.     tortious interference with contractual relations.

      e.     negligent or intentional infliction of emotional distress.

      f.     negligent hiring, negligent promotion, or negligent retention (unless resulting in an accidental bodily injury).

      g.     claims against you based on assault and battery by you or at your direction, defamation, invasion of privacy, false light publicity, negligent invasion of

      privacy, misrepresentation, fraud, false imprisonment, false arrest, malicious prosecution, unreasonable search or retaliatory discharge.

14.     A heart attack, aneurism, stroke, or seizure.

15.     Charges for:

      a.     Biofeedback and other forms of self-care or self-help training or any related diagnostic testing;

      b.     Hypnosis, acupuncture, chiropractic treatment or chiropractic therapy;

      c.     The purchase, rental or repair of environmental control devises, including but not limited to, air conditioners, humidifiers or air purifiers.

16.     A Participant's participation in any recreational, social or athletic activity not constituting part of the Participant's Scope of Employment, whether or not such participation occurs on the Employer's premises or during normal business hours.

17.     Hernia, unless such hernia is an inguinal or umbilical hernia that:

      a.     Appeared suddenly and immediately following the Accident;

      b.     Did not exist in any degree prior to the Accident; and

      c.     Is accompanied by pain.

18.     Stress, anxiety, depression, insomnia, or other similar emotional and mental disorders, even if associated with an Injury.

**4.5     Disability Benefits.**

A Participant is eligible for the Disability Benefits provided that the Participant is Disabled from performing his or her usual work for the Employer by an Accident, Occupational Disease and/or Cumulative Trauma. Said Disability must commence within ninety (90) days of the Accident or Occurrence and be diagnosed by an Approved Provider. The amount of Disability Benefits counts toward the Combined Benefit Amount Per Participant and the Combined Benefit Amount Per Occurrence. If an Injury due to an Accident or Occurrence results in the Disability of a Participant, the Plan will pay Benefits (Disability, Medical Expense, plus AD&D) in aggregate amounts up to the Combined Benefit Amount Per Participant or the Combined Benefit Amount Per Occurrence.

If these, as well as the other conditions and limitations contained in this Plan are met, the Plan will pay Disability Benefit payments beginning immediately after the Occurrence or Accident and up to the Combined Benefit Period in an amount calculated based on 85% of the Participant's Eligible Wages. Participant's Eligible Wages will be calculated as the average of the then-current Eligible Wages over the course of the prior eight (8) weeks. Disability Benefits are payable on the regularly scheduled pay period for each location. Disability Benefits payments are subject to the following limitations:

1.     The Participant must provide the Claims Administrator with satisfactory proof of Disability and of being under the care of an Approved Provider.

2.     Participant must be under the continuous care of an Approved Provider. If Participant goes 60 or more consecutive days without treatment with an Approved Provider, Disability Benefits will cease.

3.     If the Participant is released to return to work without restriction or to Maximum Rehabilitative Capacity by an Approved Provider, but the Participant does not return to work for any reason Disability Benefits shall cease.

4.     If the Participant is placed on light duty and Company cannot accommodate the Approved Provider's restrictions for that Participant, then Participant will receive Disability Benefits until either (a) Company can accommodate the Participant's restrictions; (b) Participant is placed on full duty; or (3) Participants receives the maximum 156 weeks of Disability Benefits.

5.     If Company can accommodate Participant's light duty restrictions and the Participant refuses to return to work, Disability Benefits will cease.  This provision does not affect the Participant's Medical Expense Benefits.

6.     Disability Benefits cease on the date the Participant returns to his or her regular work with the Employer.

7.     If the Participant remains Disabled from working full time, but is able to return to work on a part-time basis or earns less than his or her Eligible Wages, he or she will be deemed Partially Disabled and the Disability Benefit will be reduced by the amount of the Participant's earnings during the period of Partial Disability.

8.     Disability Benefits cease on the date the Participant dies.

9.     Disability Benefits cease on the date the Participant leaves employment for a reason other than inability to work solely because of the Injury or Employer not having suitable light duty.

10.     Disability Benefits cease on the date the Participant is released from care by an Approved Provider or refuses to participate in any medically recommended rehabilitation program or if the Disability is treatable by medical care that is reasonable and of a form that an ordinary prudent person in the same or similar circumstances would undergo and the Participant has not availed himself or herself of the treatment.

11.        Disability Benefits shall be reduced by any Other Income Benefits.

12.        Disability Benefits cease on the last day of the Combined Benefit Period.

13.        Disability Benefits are subject to the Combined Benefit Amount, the Combined Benefit Amount Per Occurrence and any other limitation or exclusion contained in the Plan.

Any requests for a leave of absence or for accommodations relating to light duty or work restrictions should be directed to the Amazon Risk or Human Resources departments (for light duty requests) or Leave of Absence and Accommodations team (for leave requests).

In no event will the Plan provide coverage for successive periods of Disability, resulting from entirely different and unrelated causes, unless such periods of Disability are separated by at least one (1) full day during which the Participant is not Disabled. Furthermore, the Plan will not provide coverage for successive periods of Disability resulting from the same or related Accidents, unless such periods of Disability are separated by at least six (6) months during which the Participant is not Disabled.

The Plan may require the Participant to submit proof of continued Disability as often as the Claims or Plan Administrator, in its sole discretion, considers necessary and reasonable. Failure to submit the required proof may cause the Plan to suspend reimbursement until such proof is received.

## 4.6    Medical Expense Benefit.

A Participant is eligible for Medical Expense Benefits for the amount of Covered Charges that result directly, and from no other cause, from Injury that results from an Accident, Cumulative Trauma and/or Occupational Disease. The Covered Charges must be the direct result of an Injury and must be incurred within the Combined Benefit Period. The first Covered Charges that are caused by the Accident or Occurrence must occur within 30 days from the date reported or 30 days from the last visit/treatment at AmCare.

The medical care and treatment must be ordered and rendered by an Approved Provider. In addition, the medical care or treatment must be deemed Medically Necessary by the Claims Administrator. In no event will the Plan pay a charge which is in excess of the Usual and Customary charge for the service, the supplies or the equipment which are needed for such care and treatment. Additionally, the Covered Charges must be incurred as a result of an Injury, Occupational Disease, or Cumulative Trauma occurring after the Plan's effective date.

No Medical Expense Benefits will be paid for any expenses incurred that are in excess of Usual, Customary and Reasonable Charges, are not Medically Necessary or any expenses that are eligible for payment or reimbursement under any other medical expense plan or policy, as determined by the Claims Administrator in its sole discretion.

Pre-Certification Requirements for Medical Expenses resulting from an Accident are designed to ensure that Hospital admissions and lengths of stay, surgery and other medical services are Medically Necessary by having the Claims Administrator refer the Participant's Claim file to a qualified Approved Provider to determine Medical Necessity. The Participant's Physician must request Pre-Certification at least three (3) days prior to a non-emergency admission or treatment. If admission or treatment is for emergency care, notice to the Claims Administrator must be given: (i) within twenty-four (24) hours after the Occurrence or Accident occurs; or (ii) on the first business day after admission or treatment on a weekend or legal holiday; or (iii) the earliest possible time thereafter.

The Claims Administrator may consult with the approved Physician, Hospital, or other facility to determine if the Hospital stay or treatment is required for the Injury. If the Claims Administrator decides that the treatment the Participant requires could be provided just as effectively through a less expensive treatment

plan, the Participant will be notified of the decision. If the Participant proceeds with the treatment plan without asking for Pre-Certification or being given a Pre-Certification notice, the Participant's Medical Expense Benefit will be denied entirely.

Medical Expense Benefits shall cease upon the earliest of:

a.      The date Maximum Rehabilitative Capacity is achieved.

b.      If the Participant goes 60 or more consecutive days without treatment from an Approved Provider after initial treatment..

c.      The expiration of the Combined Benefits Period (156 weeks) from the date of the Occurrence or Accident.

d.      The date the Combined Benefit Amount or the Combined Benefit Amount Per Occurrence is reached.

e.      Any other limitation or terminating event in this Plan.

f.      Benefits end if Participant leaves employment (1) for some reason other than the Employer not having suitable light duty or (2) if Participant leaves employment solely because of inability to work because of his/her Injury.

g.      Benefits can be terminated based on the results of a second opinion from an Approved Provider or an Independent Medical Exam ("IME").

h.      Medical Benefits cease immediately if Participant seeks treatment from a non-Approved Provider while receiving treatment from an Approved Provider.

### 4.7      Accidental Death & Dismemberment Benefits.

If Accident to the Participant results in any of the losses shown below within 365 days of the Occurrence or Accident, the Participant (or his Beneficiary in the case of death) is eligible for Accidental Death and Dismemberment Benefits. Such Benefit is the lesser of 10 times the Participant's annualized Eligible Wages or the percentage of $250,000 shown in the table below for that loss. If multiple losses occur, only one benefit amount (the largest) will be paid.

| Loss | Benefit |
| --- | --- |
| Life | 100% |
| Quadriplegia | 100% |
| Two or more Members | 100% |
| One Member | 50% |
| Hemiplegia | 50% |
| Paraplegia | 50% |
| Loss of Hearing or Speech | 50% |
| Thumb and Index Finger of the Same Hand | 25% |
| Four Fingers of the Same Hand | 25% |
| Single Finger or Toe | 10% |

"Quadriplegia" means total Paralysis of both upper and lower limbs. "Hemiplegia" means total Paralysis of the upper and lower limbs on one side of the body. "Paraplegia" means total Paralysis of both lower limbs or both upper limbs. "Paralysis" means total loss of use. An Approved Provider must determine the

loss of use to be complete and not reversible at the time the claim is submitted. The loss of use must commence within 365 days of the date of the Accident or Occurrence and continue without interruption

for a period of not less than 365 consecutive days. The loss of use must be total and irrevocable and beyond remedy by surgical or other means.

"Member" means Loss of Hand or Foot, Loss of Sight, Loss of Speech, and Loss of Hearing. "Loss of Hand or Foot" means complete Severance through or above the wrist or ankle joint. "Loss of Sight" means the total, permanent Loss of Sight of one eye. "Loss of Speech" means total and permanent loss of audible communication that is irrecoverable by natural, surgical or artificial means. "Loss of Hearing" means total and permanent Loss of Hearing in both ears that is irrecoverable and cannot be corrected by any means. "Loss of a Thumb and Index Finger of the Same Hand" or "Loss of Four Fingers of the Same Hand" means complete Severance through or above the metacarpophalangeal joints of the same hand (the joints between the fingers and the hand). "Severance" means the complete and permanent separation and dismemberment of the part from the body.

Accidental Death and Dismemberment Benefits are payable as follows: 20% of the Benefit amount will be paid in an initial lump sum and the remaining Benefit amount will be paid out over the course of 36 months.

Accidental Death and Dismemberment Benefits are further subject to the following limitations:

> 1.      The Combined Benefit Amount Per Participant and/or the Combined Benefit Amount Per Occurrence.

> 2.      Any other limitation or exclusion contained in the Plan.

## 4.8     Mileage Reimbursement.

A Participant shall be reimbursed for mileage incurred while seeking care with an Approved Provider, subject to and applicable only if Approved Provider/Medical Facility (a) is not reasonably available within 30 miles from where the Participant lives; and (b) the distance traveled to secure medical treatment is greater than 30 miles one-way.  Claims Administrator has authority to determine initial point of travel and Approved Provider designation.  Reimbursement rate is based on the travel rate for State employees on the date travel occurred.  Participant is responsible for submitting any/all request for reimbursement to Claims Administrator.

## 4.9     Forfeiture of Benefits.

A Participant's entitlement to Benefits, however provided for, under this Plan may be forfeited, suspended, or discontinued if the Participant fails to comply with or satisfy any of the requirements or provisions of this Plan or policies, procedures or  requirement  of the Plan Administrator or  Claims Administrator for the receipt of Benefits, including  without limitation, any reporting  requirements, procedures for obtaining treatment or benefits (e.g. Approved Providers, second opinions, following treatment plans), fraud or material misrepresentation, and return to work requirements.

All Benefits terminate, if a Participant resigns employment or is terminated from employment with Company as a result of gross misconduct or a Company policy violation.

## 4.10    Suspension of Benefits.

If a Participant has an unrelated/intervening, personal medical condition that occurs while Participant is treating under the Plan, Medical and Disability Benefits will cease until Participant is released from care for the unrelated/intervening, personal medical condition.

**4.11    Benefits for Temporary/Seasonal Associates.**

Medical Expense Benefits for Temporary/Seasonal Associates will continue after their assignment ends with Company subject to the provisions cited in this Plan that relate to medical treatment.  Disability Benefits cease on the date the Temporary/Seasonal Associate's assignment with Company ends.  All Benefits terminate if a Temporary/Seasonal Associates resigns or is terminated from employment with the Company as a result of gross misconduct or a Company policy violation.

**4.12    Coordination of Benefits.**

If a Participant is covered under one or more other plans including, but not limited to, automobile or health insurance or coverage (excluding the Employer group health program), the Benefits under this Plan incurred in a calendar year shall be reduced by the amount of any benefits payable by such other plan so that the total benefits payable with respect to any one Injury or Accident will not exceed 100% of the expenses incurred. The Claims Administrator will determine which plan is the primary plan that will pay its benefits first according to the following rules:

        1.        When only one of the plans has a coordination of benefits provision, then the plan without such a provision will be primary.

        2.        If both plans have such a provision, the plan under which the Participant is covered as an Employee will be the primary plan.

        3.        If both of the foregoing rules do not establish which plan is the primary plan, then the plan that has covered the person for the longer period of time will be the primary plan.

**4.13    Immediate Medical Assistance.**

The provision of immediate medical assistance is not an admission of negligence or liability of the Company, an Employer, the Plan Administrator or the Plan nor shall it constitute a determination that the Participant is entitled to further Benefits under this Plan.

**4.14    Acceptance of Medical Treatment.**

The acceptance of medical treatment by a Participant shall not obligate the Plan, Plan Administrator, Company or Employer to pay any or all related medical expenses if it is determined that the injury or illness is not an Accident, Cumulative Trauma or Occupational Disease as provided herein or is otherwise excluded or not covered by this Plan.

**4.15    Subrogation and Reimbursement.**

This provision shall apply to all Benefits provided under any section of this Plan. A Participant may incur medical or other charges related to an Accident or Occurrence caused by the act or omission of another person; or another party may be liable or legally responsible for payment of charges incurred in connection with the Accident or Occurrence. If so, the Participant may have a claim against that other person or another party for payment of the medical expenses or other charges. In that event, the Plan will be Subrogated to all rights the Participant may have against that other person or Another Party and will be entitled to Reimbursement. In addition, the Plan shall have the first lien against any Recovery to the extent of Benefits paid or to be paid and expenses incurred by the Plan in enforcing this provision. The Plan's first lien supersedes any right that the Participant may have to be "made whole." In other words, the Plan is entitled to the right of first Reimbursement out of any Recovery the Participant procures or may be entitled to procure regardless of whether the Participant has received compensation for any of his damages or expenses, including any of his attorneys' fees or costs. Additionally, the Plan's right of first Reimbursement will not be reduced for any reason, including attorneys' fees, costs, comparative negligence, limits or

collectability or responsibility, or otherwise. As a condition to receiving Benefits under the Plan, the Participant agrees that acceptance of Benefits is constructive notice of this provision.

The Participant must:

      1.     Execute and deliver a Subrogation and Reimbursement Agreement;

      2.     Authorize the Plan to sue, compromise and settle in the Participant's name to the extent of the amount of Medical Expense or other Benefits paid for the Accident or Occurrence under the Plan and the expenses incurred by the Plan in collecting this amount, and assign to the Plan the Participant's rights to Recovery when this provision applies;

      3.     Immediately Reimburse the Plan, out of any Recovery made from Another Party, 100% of the amount of Medical Expense or other Benefits paid for the Accident or Occurrence under the Plan and expenses (including attorneys' fees and costs of suit, regardless of an action's outcome) incurred by the Plan in collecting this amount (without reduction for attorneys' fees, costs, comparative negligence, limits of collectability or responsibility, or otherwise);

      4.     Notify the Plan in writing of any proposed settlement and obtain the Plan's written consent before signing any release or agreeing to any settlement; and

      5.     Cooperate fully with the Plan in its exercise of its rights under this provision, do nothing that would interfere with or diminish those rights and furnish any information required by the Plan.

When a right of recovery exists, and as a condition to any payment by the Plan (including payment of future Benefits for other Accidents or Occurrences), the Participant will execute and deliver all required instruments and papers, including a Subrogation and Reimbursement Agreement provided by the Plan, as well as doing and providing whatever else is needed, to secure the Plan's rights of Subrogation and Reimbursement, before any Medical Expense or other Benefits will be paid by the Plan for the Accident or Occurrence. If the Plan pays any Medical Expense or other Benefits for the Accident or Occurrence before these papers are signed, the Plan still will be entitled to Subrogation and Reimbursement. In addition, the Participant will do nothing to prejudice the Plan's right to Subrogation and Reimbursement and acknowledges that the Plan precludes operation of the made-whole and common-fund doctrines.

The Plan Administrator has maximum discretion to interpret the terms of this provision and to make changes as it deems necessary.

Any amounts recovered will be subject to Subrogation or Reimbursement. In no case will the amount subject to Subrogation or Reimbursement exceed the amount of Medical Expense or other Benefits paid for the Accident or Occurrence under the Plan and the expenses incurred by the Plan in collecting this amount. The Plan has a right to recover in full, without reduction for attorneys' fees, costs, comparative negligence, limits of collectability or responsibility, or otherwise, even if the Participant does not receive full compensation for all of his charges and expenses.

"Another Party" shall mean any individual or organization, other than the Plan, who is liable or legally responsible to pay expenses, compensation or damages in connection with a Participant's Accident or Occurrence. "Another Party" shall include the party or parties who caused the Accident or Occurrence; the insurer, guarantor or other indemnifier of the party or parties ho caused the Accident or Occurrence; a Participant's own insurer, such as uninsured, underinsured, medical payments, no-fault, homeowner's, renter's or any other liability insurer; a workers' compensation insurer; and any other individual or organization that is liable or legally responsible for payment in connection with the Accident or Occurrence.

"Recovery" shall mean any and all monies paid to the Participant by way of judgment, settlement or otherwise (no matter how those monies may be characterized, designated or allocated) to compensate for

any losses caused by, or in connection with, the Accident or Occurrence. Any Recovery shall be deemed to apply, first, for Reimbursement.

"Subrogation" shall mean the Plan's right to pursue the Participant's claims for medical or other charges paid by the Plan against Another Party.

"Reimbursement" shall mean repayment to the Plan for Medical Expense or other Benefits that it has paid toward care and treatment of the Accident or Occurrence and for the expenses incurred by the Plan in collecting this Benefit amount.

If the Participant retains an attorney, that attorney must sign the Subrogation and Reimbursement Agreement as a condition to any payment of Benefits and as a condition to any payment of future Benefits for other Accidents or Occurrences. Additionally, the Participant's attorney must recognize and consent to the fact that the Plan precludes the operation of the "made-whole" and "common fund" doctrines, and the attorney must agree not to assert either doctrine in his pursuit of Recovery. The Plan will neither pay the Participant's attorneys' fees and costs associated with the recovery of funds, nor reduce its reimbursement pro rata for the payment of the Participant's attorneys' fees and costs. Attorneys' fees will be payable from the Recovery only after the Plan has received full Reimbursement.

A Participant or his attorney who receives any Recovery (whether by judgment, settlement, compromise, or otherwise) has an absolute obligation to immediately tender the Recovery to the Plan under the terms of this provision. A Participant or his attorney who receives any such Recovery and does not immediately tender the Recovery to the Plan will be deemed to hold the Recovery in constructive trust for the Plan, because the Participant or his attorney is not the rightful owner of the Recovery and should not be in possession of the Recovery until the Plan has been fully reimbursed.

If the Participant is deceased, these provisions apply to the parents, trustee, guardian or other representative of a minor Participant and to the heir or personal representative of the estate of a deceased Participant, regardless of applicable law and whether or not the minor's representative has access or control of the Recovery.

If a Participant does not comply with any provisions or requirements of this Section, the Plan Administrator shall have the authority, in its sole discretion, to deny payment of any claims for Benefits by the Participant and to deny or reduce future Benefits payable (including payment of future Benefits for other Accidents or Occurrences) under the Plan by the amount due as Reimbursement to the Plan. The Plan Administrator may also, in its sole discretion, deny or reduce future benefits (including future benefits for other injuries or illnesses) under any other group benefits plan maintained by the Sponsor. The reductions will equal the amount of the required Reimbursement. If the Plan must bring an action against a Participant to enforce this provision, then that Participant agrees to pay the Plan's attorneys' fees and costs, regardless of the action's outcome.

## ARTICLE V – ADMINISTRATION OF THE PLAN

### 5.1     Plan Administrator.

The Company, or its designee, is the Plan Administrator who administers this Plan. The Plan Administrator may appoint a Claims Administrator to handle claims made under this Plan and may designate an appeals administrator to handle appeals.

### 5.2     Discretionary Rights and Duties.

The Plan Administrator is the named fiduciary under ERISA. The Plan Administrator has the exclusive responsibility for the general administration of the Plan and has the discretionary power and authority

necessary to accomplish that purpose including, but not limited to, the following rights, powers, and authorities: (i) to make rules for administering the Plan; (ii) to construe all provisions of the Plan; (iii) to correct any defect, supply, any omission, or reconcile any inconsistency that may appear in the Plan; (iv) to determine all questions relating to eligibility and all other matters relating to entitlement to benefits; (v) to resolve all controversies relating to the administration of the Plan and to ask any questions he believes are advisable for the proper administration of the Plan; (vi) direct the Claims Administrator, if any, in all matters relating to the processing of claims and payment of Plan benefits; (vii) delegate any clerical or recordation duties of the Plan Administrator as the Plan Administrator believes is advisable to properly administer the Plan; (viii) the Plan Administrator (or its delegate) may investigate all accidents, injuries, and illnesses, and promulgate, implement, and enforce workplace safety rules and standards; and (ix) appoint a Claims Administrator to assist with the administration of claims under this plan.

The action of the Plan Administrator in exercising all of the rights, powers, and authorities set out in this Article V, when performed in good faith and in its sole judgment, shall be final, conclusive, and binding upon all parties.

**5.3    Documents.**

The Plan Administrator shall make available to each Participant for his or her examination those records, documents, and other data required under ERISA, but only at reasonable times during business hours. No Participant has the right to examine any data or records reflecting information pertaining to any other Participant. The Plan Administrator is not required to make any other data or records available other than those required by ERISA.

**5.4    Indemnification.**

The Plan Administrator shall not be liable for any act or omission of its own unless required by ERISA or another applicable state or federal law under which liability cannot be waived. The Company shall indemnify any employees who have been delegated the authority to act on behalf of the Plan Administrator from any and all losses, costs, expenses, and damages arising out of such actions, unless determined by a non-appealable final order of a court of competent jurisdiction to have been guilty of gross negligence or willful misconduct.

## ARTICLE VI – CLAIMS

**6.1    Claims Procedure.**

A Claim for Benefits may be made by a Participant or Beneficiary or duly authorized representative in accordance with the Plan's procedures as set forth herein.  For purposes of determining the entitlement to Benefits, the Plan Administrator is the "named fiduciary" with the full power and authority to interpret and apply the terms of the Plan as they relate to the adjudication of Claims. The Plan Administrator has delegated the administration of Claims to the Claims Administrator who will decide the Claim in accordance with the claims procedures herein, as required by ERISA. A Participant or Beneficiary (or his or her duly authorized representative) must follow the procedures of the Claims Administrator, including, without limitation, requirements related to time frames for providing notice of an Accident or Occurrence, time frames for filing Claims or appeals, use of specific forms, protocols, and other procedures. If the Claims Administrator denies a Claim in whole or in part, the claimant will receive a written notification setting forth the reasons for the denial and describing rights, including a right to appeal the denial. A claimant must appeal the denial within certain timeframes. The Plan Administrator or its designee will decide the appeal in accordance with its reasonable claims procedures, as required by ERISA, and provide the claimant written notification of its decision. The decisions of the Plan Administrator or its designee on appeal are final and binding.

**6.2    Timing of the Notice of Denial.**

The deadline for providing the notice of a Claims denial depends on the type of Claim being denied and the reason the Claim is being denied, as set forth below.

1.      If the Claim is being denied because the Participant or the Participant's representative did not follow the Plan's procedure for submitting the Claim, the Claims Administrator must notify the Participant or the Participant's representative of the correct procedure within five days after the Claim is received. Exception for Urgent Care: If the Claim is for urgent care, the notification must be given within 24 hours after the Claim is received.

2.      If the Claim is being denied because the Participant or the Participant's representative followed Plan procedures but did not submit sufficient information for the Claims Administrator to determine whether the Claim is covered or payable by the Plan, the Claims Administrator shall notify the Participant or the Participant's representative of the additional information needed within five days after receipt of the Claim, and the Participant or the Participant's representative shall be given 45 days after the date the notice is received to provide the missing information. The Claims Administrator shall then review the additional information and notify the Participant or the Participant's representative within 15 days after the additional information is received of the Plan's determination with regard to the Claim. If no additional information is received during the 45-day response period, the Claims Administrator shall send a notice of the Claim's denial within 15 days after the end of the 45-day period. Exception for Urgent Care: If the Claim is for urgent care, the Claims Administrator shall notify the Participant or the Participant's representative of the additional information needed within 24 hours after the Claim is received, and the Participant or the Participant's representative shall be given 48 hours to provide the missing information. The Claims Administrator shall then review the additional information and notify the Participant or the Participant's representative within 48 hours after the additional information is received of the Plan's determination with regard to the Claim. If no additional information is received during the 48-hour response period, the Claims Administrator shall provide a notice of denial of the claim within 48 hours after the end of the response period.

3.      If the Participant or the Participant's representative has followed Plan procedures and has submitted sufficient information for a determination to be made, but the Claims Administrator has determined that the Claim is to be denied, then the deadline for the Claims Administrator to provide the notice of denial is 90 calendar days after the receipt of the Claim (45 days for disability claims). Exception for Urgent Care Claims: If the Claim being denied is an Urgent Care Claim, then the deadline for providing the notice of denial is 72 hours after receipt of the Claim.

**6.3    When a Claim is Received.**

The Plan will be deemed to have received a Claim for benefits if a Participant or a Participant's representative submits a written communication, except in the case of an Urgent Care Claim, in which case the Claim may be communicated orally, reasonably calculated to bring a request for a Claim to the attention of the Claims Administrator. If the Claims Administrator provides a form, such form must be used and no other written communication will be considered a Claim.

**6.4    Manner of Giving Notice.**

Notice given in writing shall either be sent by first class mail or by hand delivery. Notice may only be given electronically (that is, by email) if the Claims Administrator ensures that using email complies with ERISA's requirements applicable to electronic communication.

**6.5    Time of Determination of Claims.**

1.      Concurrent Care Decisions. In the case of a Claim review of a treatment or course of treatment before the end of a prescribed period of time or which is in addition to other treatments, if that

review results in an Adverse Benefit Determination, the Claims Administrator shall notify the Participant of the Adverse Benefit Determination at a time sufficiently in advance of the reduction or termination to allow the Participant to appeal and obtain a Benefit Determination on Review of that Adverse Benefit Determination before the benefit is reduced or terminated.

In the event of a Concurrent Care Decision which is a request by a Participant to extend the course of treatment beyond the period of time or number of treatments and is an Urgent Care Claim, such Concurrent Care Decision shall be decided as soon as possible, taking into account the medical exigencies. The Claims Administrator shall notify the Participant of the Benefit Determination, whether or not adverse, within twenty-four (24) hours after receipt of the Claim by the Plan, provided that any such Claim is made to the Plan at least twenty-four (24) hours prior to the expiration of the prescribed period of time or number of treatments. Notification of any Adverse Benefit Determination concerning a request to extend the course of treatment, whether or not involving an Urgent Care Claim, shall be made in accordance with this Plan.

     2.     Other Medical Care Claims. In the case of a Medical Care Claim that is neither an Urgent Care Claim nor a Claim involving a Concurrent Care Decision, the Claims Administrator shall notify the Participant of the Plan's Benefit Determination, as follows:

     a.     Pre-Service Claim. The Claims Administrator will render a Benefit Determination and provide notice to the Participant of such Benefit Determination (whether or not adverse) within a reasonable period of time appropriate to the medical circumstances, but not later than fifteen (15) days after receipt of the Pre-Service Claim by the Plan. This period may be extended one time by the Plan for up to fifteen (15) days, provided that the Claims Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the Participant, prior to the expiration of the initial fifteen (15) day period, of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision. If such an extension is necessary due to a Participant's failure to submit the information necessary to decide the Claim, the notice of extension shall specifically describe the required information, and the Participant shall be afforded at least forty-five (45) days from the receipt of the notice within which to provide the specified information.

In the event that the Participant fails to follow the Plan's procedures for filing a Pre-Service Claim, the Participant shall be notified of such failure and of the proper procedures to be followed in filing such a Claim. The notification shall be provided to the Participant as soon as possible, but not later than five (5) days following the failure. Notification may be oral, unless written notification is requested by the Participant. For the purposes of this section, a failure to follow the Plan's procedures for filing shall mean only such a failure that is (i) a communication by Participant that is received by a person or organizational unit customarily responsible for handling benefit matters under the Plan; and (ii) a communication that names a specific Participant, a specific medical condition or symptom, and a specific treatment, service, or product for which approval is requested.

Notification of an Adverse Benefit Determination made hereunder shall be made in accordance with this Plan

     b.     Post-Service Claim. The Claims Administrator shall render a Benefit Determination and provide written notice to the Participant of any such Adverse Benefit Determination within a reasonable period of time, but not later than thirty (30) days after receipt of the Post-Service Claim. This period may be extended one time by the Plan for up to fifteen (15) days, provided that the Claims Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the Participant, prior to the expiration of the initial thirty (30) day period, of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision. If such an extension is necessary due to a failure of the Participant to submit the information necessary to decide the Post-Service Claim, the notice of extension shall specifically describe the required information, and the Participant shall be afforded at least forty-five (45) days from receipt of the notice within which to provide the specified information.

Notification of an Adverse Benefit Determination made hereunder shall be made in accordance with this Plan.

3.      Disability Claims. If a Disability Claim is submitted, the Claims Administrator will render a Benefit Determination and provide notice to the Participant of any Adverse Benefit Determination within a reasonable period of time, but not later than forty-five (45) days after receipt of the Disability Claim (the "Initial Period"). The Initial Period may be extended by the Plan for up to thirty (30) days (the "First Extension"), provided that the Claims Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan, and notifies the Participant, prior to the expiration of the Initial Period, of the circumstances requiring the First Extension and the date by which the Plan expects to render a decision.

If, prior to the end of the First Extension, the Claims Administrator determines that, due to matters beyond the control of the Plan, a decision cannot be rendered within the First Extension, the period for making the determination may be extended for up to an additional thirty (30) days (the "Second Extension"), provided that the Claims Administrator notifies the Participant, prior to the expiration of the First Extension, of the circumstances requiring the Second Extension and the date as of which the Plan expects to render a decision.

In the case of any extension under this section, the notice of extension shall specifically explain (i) the standards on which entitlement to a benefit is based, (ii) the unresolved issues that prevent a decision on the Claim, and (iii) the additional information needed to resolve those issues, and the Participant shall be afforded at least forty-five (45) days within which to provide the specified information.

Notification of any Adverse Benefit Determination with respect to a Disability Claim shall be made in accordance with this Plan.

**6.6      Notice of Adverse Benefit Determination.**

Except as otherwise provided, the Claims Administrator shall provide a Participant with written or electronic notification of any Adverse Benefit Determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv), as amended. The notification shall set forth in a manner calculated to be understood by the Participant:

1.      The specific reason or reasons for the Adverse Benefit Determination, including the nature of the injury/ condition, relevant facts, and rationale for the denial;

2.      Reference to the specific Plan provisions upon which the determination is based;

3.      A description of additional material or information necessary for the Participant to perfect the Claim and an explanation of why such material or information is necessary;

4.      A description of the Plan's appeal procedures and time limits applicable to such procedures, including, in the case of an Urgent Care Claim, a description of the expedited review process applicable to such Claims, along with a statement of the Participant's right to bring a civil action under Section 502(a) of ERISA following an Adverse Benefit Determination On Review;

5.      In the case of an Adverse Benefit Determination regarding a Disability Claim or a Medical Care Claim, if the Adverse Benefit Determination is based upon:

a.      An internal rule, guideline, protocol, or other similar criterion, either the specific rule, guideline, protocol, or other similar criterion, or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the Adverse Benefit Determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the Participant upon request; or

b.      A medical necessity or experimental and/or investigational treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Participant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

In the case of an Adverse Benefit Determination involving an Urgent Care Claim, the information described in above may be provided to the Participant orally, provided that a written or electronic notification is furnished to the Participant not later than three (3) days after the oral notification is provided.

**6.7     Appeal Procedures.**

1.      Filing an Appeal. If a Participant disagrees with an Adverse Benefit Determination the Participant shall file an appeal of an Adverse Benefit Determination to the Plan Administrator, or its designee, within one-hundred eighty (180) days following receipt of notification of an Adverse Benefit Determination. The Participant shall be provided a reasonable opportunity for full and fair review of an Adverse Benefit Determination, in accordance with the provisions of this Section.

a.      General Review Procedures.

i.      Each Participant shall have the opportunity to submit written comments, documents, records, and other information relating to the Claim which is the subject of the appeal.

ii.     Each Participant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Participant's Claim for benefits under the Plan.

iii.    The appeal shall take into account all comments, documents, records, and other information submitted by the Participant relating to the Claim, without regard to whether such information was submitted or considered in the initial Benefit Determination.

iv.     Any new evidence considered at the appeal stage must be provided to the Participant, along with a notice to the Participant of his/her right to respond to the new information.

b.      Disability Claims and Medical Care Claims Review Procedures. The following review procedures, in addition to those set forth herein shall apply to appeals of Disability Claims and Medical Care Claims:

i.      The appeal shall not afford deference to the initial Adverse Benefit Determination and shall be conducted by a decision maker who is neither the individual who made the initial Adverse Benefit Determination that is on appeal nor any subordinate of such decision maker.

ii.     In deciding an appeal of an Adverse Benefit Determination that is based in whole or in part on a medical judgment, the decision maker shall consult with a Health Care Professional who has appropriate training and experience in the field of medicine involving the medical judgment.

iii.    All medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the Adverse Benefit Determination on appeal shall be identified without regard to whether the advice was relied upon in making the Adverse Benefit Determination.

iv.     All Health Care Professionals engaged for purposes of consultation shall be an individual who is neither an individual who was consulted in connection with the Adverse Benefit Determination that is on appeal, nor the subordinate of such individual.

v.      In the case of an Urgent Care Claim, a request for an expedited appeal of an Adverse Benefit Determination may be submitted orally or in writing by the Participant, and all

necessary information, including the Plan's Benefit Determination on Review, shall be transmitted between the Plan and the Participant by telephone, facsimile, or other available similarly expeditious method.

**6.8    Benefit Determination on Review.**

1.    Timing of Notification on Appeal.

a.    Urgent Care Claim. In the case of an Urgent Care Claim, the Plan Administrator or its designee shall notify the Participant of the Plan's Benefit Determination on Review as soon as possible, taking into account the medical exigencies, but not later than seventy-two (72) hours after receipt of the Participant's appeal of an Adverse Benefit Determination by the Plan.

b.    Pre-Service Claims. In the case of a Pre-Service Claim, the Plan Administrator or its designee shall notify the Participant of the Plan's Benefit Determination on Review within a reasonable period of time appropriate to the medical circumstances. Such notification shall be provided not later than thirty (30) days after receipt by the Plan of the Participant's appeal of an Adverse Benefit Determination.

c.    Post-Service Claims. In the case of a Post-Service Claim, the Plan Administrator or its designee shall notify the Participant of the Plan's Benefit Determination on Review within a reasonable period of time, but not later than sixty (60) days after receipt by the Plan of the Participant's appeal of an Adverse Benefit Determination.

d.    Disability Claims. In the case of a Disability Claim, the Plan Administrator or its designee shall notify the Participant of the Plan's Benefit Determination on Review within a reasonable period of time, but not later than forty-five (45) days after receipt by the Plan of the Participant's appeal of an Adverse Benefit Determination, unless the Plan Administrator or its designee determines that special circumstances require an extension of time for processing the Claim. If the Plan Administrator or its designee determines that an extension of time for processing is required, written notice of the extension shall be furnished to the Participant prior to the termination of the initial forty-five (45) day period. In no event shall such extension exceed a period of forty- five (45) days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Plan expects to render the Benefit Determination on Review.

e.    Non-Health Claims. In the case of a Non-Health Claim, the Plan Administrator or its designee shall notify the Participant of the Plan's Benefit Determination on Review within a reasonable period of time, but not later than sixty (60) days after receipt by the Plan of the Participant's appeal of an Adverse Benefit Determination, unless the Plan Administrator or its designee determines that special circumstances require an extension of time for processing the Claim. If the Plan Administrator or its designee determines that an extension of time for processing is required, written notice of the extension shall be furnished to the Participant prior to the termination of the initial sixty (60) day period. In no event shall such extension exceed a period of sixty (60) days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Plan expects to render the Benefit Determination on Review.

**6.9    Manner and Content of Notification of Benefit Determination On Review.**

The Plan Administrator or its designee shall provide a Participant with written or electronic notification of the Plan's Benefit Determination On Review. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv), as amended. In the case of an Adverse Benefit Determination On Review, the notification shall set forth in a manner calculated to be understood by the Participant:

1.    The specific reason or reasons for the Adverse Benefit Determination On Review;

      a.     Reference to the specific Plan provisions upon which the Adverse Benefit Determination On Review is based;

      b.     A statement that the Participant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Participant's Claim for benefits under the Plan.

      2.     A statement of the Participant's right to bring an action under Section 502(a) of ERISA;

      3.     In the case of an Adverse Benefit Determination On Review regarding a Disability Claim or a Medical Care Claim:

      a.     If the Adverse Benefit Determination On Review is based upon an internal rule, guideline, protocol, or other similar criterion, either the specific rule, guideline, protocol, or other similar criterion, or a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the Adverse Benefit Determination On Review and that a copy of the rule, guideline, protocol, or other similar criterion will be provided, free of charge, to the Participant upon request; or

      b.     If the Adverse Benefit Determination On Review is based upon a medical necessity or experimental and/or investigational treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Participant's medical circumstances, or a statement that such explanation will be provided, free of charge, upon request.

## 6.10    Calculating Time Periods.

For the purposes of this Section, the period of time within which a Benefit Determination or a Benefit Determination on Review is required to be made shall begin at the time a Claim or appeal, as the case may be, is filed in accordance with the procedures of the Plan, without regard to whether all information necessary to make a Benefit Determination or a Benefit Determination on Review, as the case may be, accompanies the filing. In the event that a period of time is properly extended due to a Participant's failure to submit information necessary to decide a Claim or the appeal, the period for making the Benefit Determination or the Benefit Determination on Review shall be tolled from the date on which the notification of the extension is sent to the Participant until the date on which the Participant responds to the request for additional information.

## 6.11    Relevance.

For the purposes of this Section, a document, record, or other information shall be considered "relevant" to a Participant's Claim if such document, record, or other information:

      1.     was relied upon in making the Benefit Determination;

      2.     was submitted, considered, or generated in the course of making the Benefit Determination, without regard to whether such document, record, or other information was relied upon in making the Benefit Determination;

      3.     demonstrates compliance with any administrative processes and safeguards in making the Benefit Determination; or

      4.     in the case of a Disability Claim or a Medical Care Claim, constitutes a statement of policy or guidance with respect to the Plan concerning the denied treatment option or benefit for the Participant's diagnosis, without regard to whether such advice or statement was relied upon in making the Benefit Determination.

**6.12    Rights of Recovery.**

Whenever Benefit payments have been made in excess of the maximum amount of payment required under the Plan, the Plan Administrator shall have the right, exercisable alone and in its sole discretion, to recover such excess payments.

**6.13    Exhaustion of Administrative Remedies.**

No action at law or in equity may be brought to recover Benefits under the Plan until all administrative remedies, including the full Claims and appeal procedures, have been exhausted. If a Participant fails to file a timely Claim, or if the Participant fails to request a review in accordance with the reasonable Claim procedures, such Participant shall have no right of review and shall have no right to bring any action in any court. The denial of the Claim shall become final and binding on all persons for all purposes. A Participant or Beneficiary who has exhausted the Plan's Claims and Appeals procedures has the right to bring a civil action under Section 502(a) of ERISA provided the civil action is filed within 1 Year after the final determination upon appeal under the Plan's Claims and Appeals procedures.

**6.14    Participant's Responsibilities.**

Each Participant shall be responsible for providing the Claims Administrator and/or the Employer with the Participant's current U.S. mailing address and electronic address. Any notices required or permitted to be given hereunder shall be deemed given if directed to such address furnished by the Participant and mailed by regular United States mail or by electronic means as specified in 29 CFR 2520.104b-lI of ERISA. The Claims Administrator, Plan Administrator, Company and the Employer shall not have any obligation or duty to locate a Participant. In the event that a Participant becomes entitled to a payment under the Plan and such payment is delayed or cannot be made:

> 1.    Because the current address according to the Claims Administrator's records is incorrect;

> 2.    Because the Participant fails to respond to the notice sent to the current address according to the Claims Administrator's records;

> 3.    Because of conflicting claims to such payments; or

> 4.    For any other reason,

The amount of such payment, if and when made, shall be determined under the provisions of the Plan without payment of any interest or earnings.

## ARTICLE VII – AMENDMENT AND TERMINATION

**7.1    Amendment.**

The Plan Sponsor has the sole right to amend this Plan. An amendment may be made by (i) a resolution or consent of the Company or its designee, or (ii) by an instrument in writing executed by the appropriate

officer or employee of the Plan Sponsor.  The amendment must describe the nature of the amendment and its effective date.

**7.2    Termination.**

The Plan Sponsor may terminate this Plan by executing and delivering to the Plan Administrator a notice of termination specifying the date of termination.

## ARTICLE VIII – MISCELLANEOUS

**8.1      Creditors.**

None of the payments, Benefits, proceeds, claims or other rights afforded to any Employee, Participant or Beneficiary under this Plan shall be subject to any claim of any creditor, and, in particular, to the fullest extent permitted by law, all such payments, Benefits, and rights shall be free from attachment, garnishment, trustee's process, or any other legal or equitable process available to any creditor of such Employee or Participant or Beneficiary. No Employee, Participant or Beneficiary shall have the right to alienate, anticipate, pledge, encumber, hypothecate, or assign any Benefit, payment, proceed, claim or other right, contingent or otherwise, which he or she may be entitled or expect to receive or assert under this Plan.

**8.2      No Contract of Employment.**

Neither the establishment of this Plan nor any modification hereof, nor the creation of any fund, trust, or account, nor the maintenance of the Plan, nor the payment of any Benefit hereunder, shall be construed as giving any Participant or Employee, or any person, the right to be retained in the service of the Company or an Employer, and all Participants and other Employees shall remain subject to discharge at will, to the same extent as if this Plan had never been adopted and the Plan never obtained.

**8.3      Heirs.**

This Plan shall be binding upon the heirs, executors, administrators, successors, and assigns of the parties including each Participant, estate of a Participant, and beneficiary of a Participant, present and future.

**8.4      Headings.**

The headings and captions herein are provided for reference and convenience only, and shall not be considered part of this Plan, and shall not be used in construction of this Plan.

**8.5      Gender.**

Except where otherwise clearly indicated by context, the masculine and the neuter shall include the feminine and the neuter, the singular shall include the plural, and vice-versa.

**8.6      Controlling Law.**

This Plan is an "employee welfare benefit plan" as defined in Section 3(1) of the Employee Retirement Income Security Act of 1974, as a Plan maintained for the purpose of providing disability, death, or

dismemberment benefits in the event of an injury. This Plan shall be governed, construed, and enforced according to Federal law to the maximum extent available.

**8.7      Assets.**

No Participant shall have as a result of the adoption of this Plan any right to, or interest in, any assets of this Plan or Company or Employer, upon termination of his employment or otherwise.

**8.8      Expenses.**

All expenses for management and administration of this Plan shall be paid by the Company and/or participating Employers.

**8.9** **Offset.**

The purpose of the Plan is to provide wage, disability, accidental death & dismemberment and medical benefits related to workplace injuries to eligible Participants. Additionally, the purpose of the Plan is to reduce any damage award which may result from a work place injury. All Benefits shall be construed as an offset against any damage award by a court of law with respect to any claim related to a work place injury against the Company, Employer or its respective officers, directors or employees. Benefits paid under this Plan shall not be considered payment from a collateral source as that term is defined by statute or case law.

**8.10** **No Admission of Liability.**

Payments made under this Plan shall not in any way constitute an admission of liability or responsibility by the Company, Employer or its respective officers, directors or employees for an injury.

**8.11** **Severability.**

If any provision herein is found unenforceable by a court of law, it shall not affect the enforceability of the remainder of the Plan.

*       *       *       *       *

IN WITNESS WHEREOF, the Company has executed this AmazonTXCare Employee Injury Benefit Plan as of the date appearing below.

**AMAZON.COM SERVICES, INC.**

By:    _____
       Nancy Wollebek, Director
       Finance, Global Risk Management & Claims

Date:  _____

## SCHEDULE A – PARTICIPATING EMPLOYERS

**This Schedule may be changed without a formal amendment to the Plan.**

| Company Name | FEIN |
|---|---|
| Amazon.com.kydc LLC | 91-1973213 |
| AMZN wvcs LLC | 91-1980273 |
| Amazon.com Services, Inc. | 82-0544687 |
| Amazon Services LLC | 71-0938319 |
| A2Z Development Center, Inc. | 73-1714484 |
| Amazon Web Services, Inc. | 20-4938068 |
| Amazon Pickup Points LLC | 91-2132316 |
| Amazon Retail LLC | 91-2172399 |
| Amazon Media Group LLC | 42-1749823 |
| Amazon Robotics LLC | 71-0933087 |
| Twitch Interactive, Inc. | 20-5578222 |
| TenMarks Education LLC | 26-4165749 |
| Elemental Technologies LLC | 20-5237214 |
| Prime Now LLC | 81-3530904 |
| Iconology,Inc. d/b/a comiXology | 20-8782907 |
| Goodreads LLC | 20-8239253 |
| Curse LLC | 87-0788547 |
| Zappos Merchandising, Inc. | 27-1290998 |
| Annapurna Labs (U.S.) Inc. | 45-2588732 |
| Woot, Inc. | 20-0155329 |
| Woot Services LLC | 26-3986200 |
| Woot Workshop LLC | 26-3988249 |

## MUTUAL AGREEMENT TO ARBITRATE

1. **Effective Date and Acceptance Date.**

The effective date of this Mutual Agreement to Arbitrate Claims ("Agreement") is March 1, 2020. Company and Employee/ Claimant (as those terms are defined herein) mutually agree to resolve any Covered Claims which occur on or after the effective date according to the terms and conditions of this Agreement.

2. **Acts of Acceptance.**

Any one of the following actions shall constitute acceptance of the terms and conditions of this Agreement:

a.   If Employee receives notice of this Agreement prior to commencing work at Company, Employee's commencement of work at Company shall constitute acceptance; or

b.   If Employee receives notice of this Agreement after commencing work at Company, Employee's continuation of employment at Company constitutes acceptance if Employee continues to work for three (3) days after receipt of the notice; or

c.   If Employee incurs an injury within the Course and Scope of Employment and has not previously accepted under subsection (a) or (b) above, notice of this Agreement may be provided to Claimant.   If such notice is provided, Employee's subsequent receipt of any benefit payable under the Company's Employee Injury Benefit Plan shall constitute acceptance.

d.   For an Employee who hauls goods, merchandise, and equipment interstate, in addition to coverage under this Agreement by virtue of continued employment after receiving notice of this Agreement, Employee's receipt of benefits under the AmazonTXCare Employee Injury Benefit Plan (the "Plan") forms the consideration for enforcement of this Agreement as to Employee.

3. **Definitions.**

a.   "Company" includes Amazon.com Services, Inc. and any of its affiliates or associated entities, and all of their officers, directors, agents, franchisors, franchisees, successors, representatives, predecessors.

b.   'Employee" means a person who is employed by Company and has a Covered Claim. "Claimant" shall mean an Employee or an Employee's spouse, children, parents, estate, successors and assigns.

c.   "Course and Scope of Employment" means an activity of any kind or character that has to do with or originates in the work, business, trade, or profession of Company and that is performed by Employee while engaged in or about the furtherance of the affairs or business of Company.   The term includes an activity conducted on the premises of Company or at other locations.

d.   "Covered Claim" or "Covered Claims" means any and all claims included or described in Paragraph 6(a) of this Agreement.

4. **Federal Arbitration Act Applies.**

Company is engaged in "commerce" as that term is defined in Section 1 of the Federal Arbitration Act ("FAA").   The FAA governs all aspects of this Agreement, including conduct of the arbitration and all procedures following an arbitrator's award.

5.   **Arbitration is Mandatory for Covered Claims**.

Covered Claims shall be exclusively resolved by binding arbitration.  While Employee, Claimant, and Company retain all substantive legal rights and remedies under this Agreement, Employee, Claimant and Company are waiving all rights they may have with regard to trial, whether jury or non-jury, in state or federal court for any Covered Claim.

6.   **Scope of Arbitration Agreement**.

a.   **Claims Covered by This Agreement**.

(i) This Agreement is mutual, covering all claims that Company or Employee/ Claimant may have which arise from:  any injury suffered by Employee while in the Course and Scope of Employee's employment with Company, including but not limited to, claims for negligence, gross negligence, and all claims for personal injuries, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages and any other loss, detriment or claim of whatever kind and character

(ii) This Agreement covers all Claims and causes of action arising under the federal and state employment laws. This includes, but is not limited to, claims under Title VII of the Civil Rights Act, the Fair Labor Standards Act, the Texas Commission on Human Rights Act, the Americans with Disability Act, the Family and Medical Leave Act, the Age Discrimination in Employment Act, as well as all common law claims, including those for discrimination, retaliation, harassment, tortious interference and wrongful discharge.

(iii)  Employee/ Claimant is also obligated to arbitrate any action against a current or former supervisor or other agent of Company in his or her individual capacity based upon any claim arising out of Employee's employment or termination from employment.

b.   **Claims Not Covered by This Agreement**. This agreement does not apply to:

(i) Claims for benefits under the Company's Employee Injury Benefit Plan;

(ii) Workers' Compensation Benefits under the Texas Workers' Compensation Act or any other similar state or federal law;

(iii) Claims based upon Company's pension or benefit plan that contains an arbitration or other non-judicial resolution procedure, in which case the provisions of that plan shall apply;

(iv) Claims covered by a collective bargaining agreement, in which case the terms, conditions and procedures of that collective bargaining agreement shall control.

(v) Claims for Unemployment Compensation Benefits.

(vi) Claims under the National Labor Relations Act.

Nothing in this Agreement precludes the parties from agreeing to resolve claims that are otherwise not covered by this Agreement the same as if they were Covered Claims.

c.   **Arbitrability of Particular Disputes**. Any question as to the arbitrability of any particular claim shall be arbitrated pursuant to the procedures set forth in this Agreement.

d.   **Class Action Waiver.**  By this Agreement, Employee/ Claimant waives the right to pursue any claim covered by this Agreement through a joint, collective or class action process in any forum, whether arbitral or judicial.  As such, Employee/ Claimant can pursue any Covered Claim only in his/ her own capacity and behalf and not on the behalf of other Company employees.

7.   **Procedure**.

a.   **Who Shall Arbitrate**? All arbitrations under this Agreement shall be administered by the American Arbitration Association ("AAA) under its rules for the resolution of disputes.  In the event that AAA is unable or unwilling to administer the arbitration, Judicial Arbitration and Mediation Services

("JAMS") shall administer the arbitration under its rules for the resolution of disputes. Or, the parties may utilize any arbitrator that is mutually agreeable to Employee and Company. For any arbitration under this Agreement, a single arbitrator shall be appointed. Company and Employee/ Claimant are to participate in the selection of a neutral arbitrator as follows: The parties shall be presented a panel with a minimum of three different arbitrators. Company and Employee/ Claimant may agree to the selection of one arbitrator from the panel. If agreement is not reached, Company and Employee/ Claimant shall have an equal number of strikes. The parties shall continue to strike arbitrators from the panel until one arbitrator remains. That person shall then arbitrate the claim. Any arbitrator must be neutral as to all parties. Standards for the recusal of an arbitrator shall be the same standards under which trial judges are recused under Texas law.

b. **Where Shall the Arbitration Take Place**? The arbitration shall take place within 25 miles of the location where Employee worked for Company at the time of the injury.

c. **Payment of Fees and Expenses**. Company shall be responsible for the fees of the arbitrator and the cost of a stenographic record of the arbitration hearing. Employee/ Claimant must pay the initial filing fee for the Arbitration.

d. **Discovery and Pre-Arbitration Motions**. All parties are entitled to pre-arbitration discovery under the Texas Rules of Civil Procedure. The same discovery devices and scope of discovery as set forth in those rules shall apply. All parties are entitled to file any motions, including dispositive motions, set forth in the Texas Rules of Civil Procedure.

e. **Remedies and Defenses**. All parties are entitled to allege any claim, obtain any remedy and assert any legal or equitable defense that the party could allege, obtain, or assert in a Texas state or federal court. With respect to any claim which allows for an award of attorneys' fees, the arbitrator must award attorney fees, if any, that bear a reasonable relationship to (1) the amount of the damages award and (2) the time, effort, and efficiency expended by the attorney in securing the damage award.

f. **Record**. A stenographic record may be taken of the arbitration hearing upon the request of either party or the arbitrator.

g. **Written Award**. Within a reasonable time after the conclusion of the arbitration hearing, the arbitrator shall issue an award and send a copy to all parties. Either party can appeal the award under the standards provided in the Federal Arbitration Act.

h. **Judgment**. Any party to an arbitration award may file the award in an appropriate Texas state court and move that a judgment be entered on the arbitration award.

i. **Confidentiality**. The parties agree that any settlement or arbitration of a Covered Claim shall be kept confidential except:

(i) **Communications made, pleadings filed and materials submitted in connection with the entry or appeal of an award of the arbitrator;**

(ii) **Communications or reporting to the Internal Revenue Service;**

(iii) **If Employee or Company is compelled to testify by subpoena.**

**8. Consideration.**

In addition to any other consideration that may exist for the agreement to arbitrate, Company's and Employee's/ Claimant's mutual promise to resolve claims and controversies by arbitration in accordance with the provisions of this Agreement constitutes consideration for this Agreement. Employee's continued employment with Company after receiving notice of the institution of the Agreement also constitutes consideration for this Agreement. Finally, this Agreement is presented in connection with Company's Employee Injury Benefit Plan. Payments made under that Plan also constitute consideration for this Agreement.

**9. Enforceability.**

If any provision of this Arbitration Program is adjudged to be invalid, illegal or unenforceable, in whole or in part, the balance of this Agreement shall remain in effect.

10. **Not an Employment Agreement**.

This Agreement is not, and shall not be construed to create, any contract of employment, express or implied, nor shall the Agreement be construed in any way to change the employment status of any Employee of Company from at-will status.

11. **Termination and Modification of Agreement**.

Company shall have the right to prospectively terminate and modify this Agreement. Termination or modification is not effective for Covered Claims which accrued or occurred prior to the date of the termination. Termination and modification are also not effective until ten (10) days after reasonable notice is given to Claimant.

12. **Term**.

This Agreement commences on the Acceptance Date and applies to all Covered Claims which occurred on or after the effective date.

This Agreement shall survive the employer-employee relationship between the Company and the Employee and shall apply to any Covered Claim whether it arises or is asserted during or after separation of the Employee's employment with the Company or the expiration of any benefit plan.

13. **Sole and Entire Agreement**.

This Program Agreement constitutes the parties' complete agreement and supersedes any prior agreement regarding arbitration of Covered Claims which occur during the Term of this Agreement.

14. **Applicability of This Agreement to Others**.

Employee and Company intend and expressly agree that any Covered Claim of Employee's spouse, children, parents, estate, successors and/or assigns that now exists or that may come into existence in the future which arises from, relates to, or is derivative of any Covered Claim, shall be resolved according to the terms and conditions of this Agreement.

Employee and Company intend and expressly agree that any Covered Claim of Company's officers, directors, agents, predecessors, successors, and affiliated companies that arises from, relates to, or is derivative of any Covered Claim of Company, shall be resolved according to the terms and conditions of this Agreement.

15. **Spanish Language Version**.

This Agreement has been translated into Spanish. In the event of any discrepancy or conflict between the English and Spanish versions of this Agreement, the terms of the English language version shall control.

**Si usted necesita el documento en espanol, consulte con recursos humanos.**

**Exhibit B**

Jeff Cravalho and Rahul Deswal – Snips and conversations, 11/13/2023

**MyDocs Logs**:



**Adobe sign Logs**:



**MyDocs Time stamps**:





**Document Information Panel**   ✕

**Document Type**
Attendance Policy

**Document**
Attendance Policy - Employee ID: 106618651
Candidate ID: CID035383855 - Edwards, Teri Rene

**Document Date**
04/14/2020

⌃ **Keywords**

Portal Status
Employee

Portal Status Updated
4/16/2020 7:39:48 PM

**Document Information Panel**   ✕

**Document Type**
Computer Use Policy

**Document**
Computer Use Policy - Employee ID: 106618651
Candidate ID: CID035383855 - Edwards, Teri Rene

**Document Date**
04/14/2020

⌃ **Keywords**

Portal Status Updated
4/16/2020 7:46:15 PM

**Document Information Panel**   ✕

**Document Type**
The Owner's Manual

**Document**
The Owner's Manual - Employee ID: 106618651
Candidate ID: CID035383855 - Edwards, Teri Rene

**Document Date**
04/14/2020

⌃ **Keywords**

Portal Status Updated
4/16/2020 7:54:51 PM

**Document Information Panel**   ✕

**Document Type**
Workplace Policies and Procedures Acknowledgement

**Document**
Workplace Policies and Procedures Acknowledgement
- Employee ID: 106618651 Candidate ID:
CID035383855 - Edwards, Teri Rene

**Document Date**
04/14/2020

⌃ **Keywords**

Portal Status Updated
4/16/2020 7:58:42 PM



**Document Information Panel**   ✕

**Document Type**
Terms of Employment

**Document**
Terms of Employment - Employee ID: 106618651
Candidate ID: CID035383855 - Edwards, Teri Rene

**Document Date**
04/14/2020

⌃ **Keywords**

Portal Status Updated
4/16/2020 8:07:39 PM

**Document Information Panel**   ✕

**Document Type**
Confidentiality Agreement

**Document**
Confidentiality Agreement - Employee ID: 106618651
Candidate ID: CID035383855 - Edwards, Teri Rene

**Document Date**
04/14/2020

⌃ **Keywords**

Portal Status Updated
4/16/2020 8:07:35 PM

**Document Information Panel**   ✕

**Document Type**
Arbitration Agreement

**Document**
Arbitration Agreement - Employee ID: 106618651
Candidate ID: CID035383855 - Edwards, Teri Rene

**Document Date**
04/14/2020

⌃ **Keywords**

Portal Status Updated
4/16/2020 8:07:29 PM

**Document Information Panel**   ✕

**Document Type**
State Wage Notification

**Document**
State Wage Notification - Employee ID: 106618651
Candidate ID: CID035383855

**Document Date**
04/14/2020

⌃ **Keywords**

Portal Status Updated
4/16/2020 8:17:30 PM



**Document Information Panel**                              ✕

**Document Type**
W-4 Tax Information

**Document**
W-4 Tax Information - Employee ID: 106618651
Candidate ID: CID035383855 - Edwards, Teri Rene

**Document Date**
04/14/2020

⨯ **Keywords**

Portal Status Updated
4/16/2020 8:20:28 PM

**IP Address of signer: 172.58.99.96**



IP Details For: 172.58.99.96

| | |
|---|---|
| Decimal: | 2889507680 |
| Hostname: | 172.58.99.96 |
| ASN: | 21928 |
| ISP: | T-Mobile USA Inc. |
| Services: | None detected |
| Assignment: | Likely Static IP |
| Country: | United States |
| State/Region: | Texas |
| City: | Houston |
| Latitude: | 29.7630 (29° 45′ 46.90″ N) |
| Longitude: | -95.3621 (95° 21′ 43.42″ W) |

**Adobe Sign setting:**

Signature Preferences ↻

Sign and initial documents in specified locations and fill in forms in just seconds. Signers can optionally sign with a biometric signature if allowed.

*Casey Jones (Jan 15, 2017)*

**100% ESIGN compliant.** The best solution where signatures are required in specified locations and paper-like signature appearance is important.

☐ Use well-formatted signatures and initials ⓘ      *Well formatted signatures include signature date, signer name and a line below the signature.*
  ☑ Dynamically adjust line below the signature

Signature Preferences ↻

Sign and initial documents in specified locations and fill in forms in just seconds. Signers can optionally sign with a biometric signature if allowed.

*Casey Jones (Jan 15, 2017)*

**100% ESIGN compliant.** The best solution where signatures are required in specified locations and paper-like signature appearance is important.

☐ Use well-formatted signatures and initials ⓘ
  ☑ Dynamically adjust line below the signature and initials ⓘ

**Chime Conversation**:

[November 13, 2023, 8:48 AM] Deswal, Rahul: Hey Jeff
[November 13, 2023, 8:48 AM] Deswal, Rahul: quick question regarding the last request about me signing a document
[November 13, 2023, 8:48 AM] Cravalho, Jeff: Hi Rahul - yes
[November 13, 2023, 8:48 AM] Deswal, Rahul: I haven't done something like that
[November 13, 2023, 8:49 AM] Deswal, Rahul: this just came as a support ticket which I started looking to help
[November 13, 2023, 8:49 AM] Deswal, Rahul: but if that's needed I'll have to check with my team
[November 13, 2023, 8:49 AM] Deswal, Rahul: this is just new, so don't know what should be the process
[November 13, 2023, 8:49 AM] Cravalho, Jeff: for my team our L7 is only approved signer - if you can't sign, we'll have to look for another option, which is OK
[November 13, 2023, 8:50 AM] Deswal, Rahul: we have shared information in past, but never heard any tech signing any docs
[November 13, 2023, 8:50 AM] Cravalho, Jeff: Yeah, I'll connect with Warren on that portion
[November 13, 2023, 8:50 AM] Cravalho, Jeff: if you can get me the info, we'll see if someone else can sign
[November 13, 2023, 8:51 AM] Deswal, Rahul: sure
[November 13, 2023, 8:51 AM] Deswal, Rahul: sharing it again now, if I have shared anything earlier ignore it as duplicate
[November 13, 2023, 8:52 AM] Cravalho, Jeff: OK - thank you
[November 13, 2023, 8:56 AM] Deswal, Rahul: Initial loginimage.png
[November 13, 2023, 8:57 AM] Deswal, Rahul: image.png
[November 13, 2023, 8:57 AM] Deswal, Rahul: Adobe Sign Envelope Transaction
[November 13, 2023, 9:05 AM] Deswal, Rahul: Different documents acknowledged at different time: (not adding all docs)
[November 13, 2023, 9:05 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:06 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:07 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:07 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:08 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:09 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:09 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:10 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:10 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:11 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:12 AM] Deswal, Rahul: image.png

[November 13, 2023, 9:12 AM] Deswal, Rahul: all these docs were completed at different times, from the initial login
[November 13, 2023, 9:12 AM] Deswal, Rahul: all times in UTC
[November 13, 2023, 9:12 AM] Cravalho, Jeff: OK, thank you
[November 13, 2023, 9:13 AM] Deswal, Rahul: We don't have IP address, but got it from Adobe account it captures it as part of signature request
[November 13, 2023, 9:13 AM] Deswal, Rahul: IP address: 172.58.99.96
[November 13, 2023, 9:14 AM] Cravalho, Jeff: Were you able to find the properties set up on Amazon's Adobe sign account?
[November 13, 2023, 9:15 AM] Deswal, Rahul: let me check this IP address once
[November 13, 2023, 9:15 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:15 AM] Deswal, Rahul: In reply to message from Cravalho, Jeff:Were you able to find the properties set up on Amazon's Adobe sign account?checking that
[November 13, 2023, 9:26 AM] Deswal, Rahul: here is the setting adobe account
[November 13, 2023, 9:26 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:26 AM] Deswal, Rahul: if you enable it date stamp is captured below signature
[November 13, 2023, 9:27 AM] Deswal, Rahul: we haven't enabled it because we capture date separately as you can see in all the documents
[November 13, 2023, 9:27 AM] Cravalho, Jeff: can you send me without the explanation of "well documented signature" as well?
[November 13, 2023, 9:27 AM] Cravalho, Jeff: "well formatted signature"
[November 13, 2023, 9:27 AM] Cravalho, Jeff: I'll use both
[November 13, 2023, 9:28 AM] Deswal, Rahul: image.png
[November 13, 2023, 9:32 AM] Deswal, Rahul: you need anything else
[November 13, 2023, 9:32 AM] Cravalho, Jeff: I don't think so - thanks for the support here
[November 13, 2023, 9:32 AM] Deswal, Rahul: cool 😊